_____

No. 96-2810
_____

George A. Schiltz,                    *
                                      *
           Appellant,                 *
                                      *   Appeal from the United States
      v.                              *   District Court for the
                                      *   District of Minnesota
Burlington Northern Railroad;         *
Transportation Communications         *
Union, et al.,                        *
                                      *
           Appellees.                 *
_____

                 Submitted:  March 13, 1997

                 Filed:   June 23, 1997
_____

Before WOLLMAN and BEAM, Circuit Judges, and REASONER,[1] District   Judge.
_____

REASONER, District Judge.


     This is an appeal from the district court's[2] granting summary
judgment in favor of Appellees Burlington Northern Railroad (BNR) and the
Transportation Communications International Union (TCU), and against
Appellant George Schiltz (Schiltz).  Schiltz argues that the district court
erred in:  (1) determining that BNR had not discriminated against Schiltz
on the basis of age when it failed to hire him for various jobs for which
Schiltz had applied; (2) determining that Schiltz's union seniority rights
were based in the Northeastern District, Number 5, as opposed to the St.
Paul District, Number 3; (3) determining that BNR's refusal to grant

_____

     [1]The Honorable Stephen M. Reasoner, Chief Judge, United
States District Court for the Eastern District of Arkansas,
sitting by designation.

     [2]Schiltz appeals various portions of the Honorable David S.
Doty's Orders of March 3, 1994 and December 22, 1994, and the
Honorable John R. Tunheim's Order of June 5, 1996.

Schiltz's union seniority rights in the St. Paul District was not based upon improper age discrimination; and (4) determining that TCU's refusal to represent Schiltz in his grievance before the National Railroad Adjustment Board (NRAB) was not a breach of its duty of fair representation and was not discriminatory. We affirm.

## I. Background

### A. Factual Background

Schiltz began working for the Chicago, Burlington & Quincy Railroad (CB&Q) at the age of eighteen in May of 1962; he was a clerical employee for the railroad in Chicago, Illinois. In this position, Schiltz was a union, or scheduled, employee and covered by the applicable collective bargaining agreement (CBA) between CB&Q and the Brotherhood of Railway and Airline Clerks (now TCU). In 1967, TCU and BNR entered into a CBA known as the "Orange Book" which covered all union employees working for that railroad. Subsequently, in 1970, the CB&Q, along with several other railroads, merged with BNR. Therefore, in 1970, Schiltz, now a BNR employee, fell under the ambit of the Orange Book.

In March of 1970, various union positions of BNR's Chicago office were transferred to BNR's office in St. Paul, Minnesota. However, at about this same time, Schiltz took an exempt, or non-union, position with BNR. Schiltz did move to St. Paul in 1970, and he worked there as a non-union employee for twenty-one years, that is, until he received a termination notice on September 16, 1991, effective October 31, 1991. This notice, sent by BNR's Senior Vice President for Human Resources, James Dagnon (Dagnon), informed Schiltz that his exempt position would be eliminated and

that he would not be placed in another one.[3]  This notice also gave Schiltz three options:  (1) to sign a separation release which included severance pay; (2) to elect to exercise his union seniority rights to a location where he had union seniority; or (3) to terminate his employment without severance and without signing a release.

In October of 1991, Schiltz opted to return to the union ranks; however, he sought to exercise his seniority rights in the St. Paul district.  Schiltz sent both BNR's Dagnon and TCU's General Chairman Richard A. Arndt (Arndt) letters to this effect.  By letter dated October 29, 1991, Arndt informed Schiltz that his seniority was not in the St. Paul district, but in the Northeastern district.[4]  On October 31, 1991, BNR also informed Schiltz that his seniority rights had remained in the Northeastern district, and he could not exercise his seniority rights in the St. Paul district.  Subsequently, Schiltz informed BNR that he would grieve the location of his seniority rights; however, in November 1991,

---

[3]In part, the notice states:

As has been communicated to you, Burlington Northern is undergoing significant efforts to reduce its overall expenses, including employee related expenses.  Regrettably, but out of necessity, we have reached the conclusion that programs to reduce our exempt work force in 1991 are both appropriate and timely.

As a result of careful study and consideration, your position will be eliminated or you will be removed from your position effective October 31, 1991.  BN has provided a separation package designed to assist you in your pursuit of another career or other interests.

Sept. 16, 1991 Letter from Dagnon to Schiltz.

[4]By agreement, BNR and TCU had restructured the seniority districts during the time that Schiltz had been a non-union employee in St. Paul.  Originally, Schiltz was listed on the Chicago district's seniority roster.  Under the terms of the new agreement, the Chicago district was reorganized and renamed the Northeastern seniority district.

Schiltz also exercised, under protest, his seniority in the Northeastern seniority district and accepted a union position in LaCrosse, Wisconsin, a location within the Northeastern seniority district. Schiltz currently holds the position he took there. Moreover, both before and after Schiltz received his termination notice from Dagnon, Schiltz applied for various exempt positions with BNR. He was never offered any of the positions for which he applied.

Schiltz then grieved the location of his seniority rights through the appropriate channels within BNR. On November 25, 1991, BNR declined Schiltz's grievance. By letter dated December 6, 1991, Schiltz turned over his grievance to TCU's local representative for appeal. Arndt advised Schiltz in a letter dated December 30, 1991, that TCU would not progress his grievance to arbitration due to its lack of merit. Schiltz subsequently appealed Arndt's determination through proper channels within the union, and Arndt's determination that Schiltz's claim was meritless was affirmed at each stage in the process. Ultimately, Schiltz progressed his seniority appeal to the NRAB. On May 10, 1995, the NRAB rendered its decision regarding Schiltz's seniority status. The NRAB found that Schiltz seniority was based in the Northeastern seniority district. The NRAB found Schiltz had transferred to St. Paul in 1970 as an exempt employee; therefore, his seniority remained in the Northeastern district. Alternatively, the NRAB found that Schiltz's claim was barred under the equitable doctrine of laches, as each year the seniority roster for the St. Paul district had been posted in a conspicuous place, and Schiltz had never contested his name's not appearing thereon until the instigation of this suit.

### B. Procedural Background

Schiltz originally filed this action against BNR and TCU on August 19, 1993. Schiltz's original Complaint included counts of

-4-

age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and age discrimination and retaliation under the Minnesota Human Rights Act, Minn. Stat. § 363.01 et seq., against BNR and TCU. The Complaint further alleged that BNR had violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., and that BNR had breached its contract with Schiltz. Finally, the Complaint alleged TCU had breached its duty of fair representation that it owed Schiltz under the Railway Labor Act, 45 U.S.C. § 151 et seq.

By its Order dated March 3, 1994, the district court found the breach of contract claim against BNR to be arbitrable before the NRAB and dismissed the claim due to its lack of jurisdiction over the matter. This same Order separated the discrimination claims against BNR into three parts, and it dismissed as arbitrable the claim that BNR had discriminated against Schiltz on the basis of age in determining his seniority lay in the Northeastern district. By Order of December 22, 1994, the court granted summary judgment on the age discrimination claim based on BNR's refusal to place Schiltz in another management position. Finally, based upon stipulation of the parties in an Order dated November 3, 1995, the court dismissed the claim concerning BNR's age discrimination based upon the elimination of Schiltz's position. This same Order also dismissed the ERISA claim based upon stipulation of the parties.

By its Order dated December 22, 1994, the district court granted the motion of TCU and the other individually named defendants for summary judgment on Schiltz's claims under the Minnesota Human Rights Act. Moreover, the court denied TCU's motion for summary judgment on Schiltz's ADEA claim and his claim that the union had breached its duty of fair representation.

Schiltz's breach of contract claim then proceeded to arbitration before the NRAB, and on May 10, 1995, that body handed

down its decision.  The NRAB denied Schiltz's claim on the grounds listed above.  See supra p. 4.

Schiltz then sought reversal of the NRAB decision in district court. By its Order dated June 5, 1996, the district court denied Schiltz's motion to reverse the NRAB decision and granted TCU's motion for summary judgment on Schiltz's ADEA claim and his claim for breach of duty of fair representation.  Schiltz raised four issues on appeal.  See supra pp. 1-2.

## II.  Age Discrimination Claim Based on BNR's Failure to Hire

With regard to the summary judgment granted on Schiltz's age discrimination, we review the district court's grant of summary judgment de novo, applying the same standards as did the district court.  Garner v. Arvin Indus., Inc., 77 F.3d 255, 257 (8th Cir. 1996)(citations omitted). Summary judgment is only appropriate when the record is viewed in the light most favorable to the nonmoving party, when it reveals that no genuine issue of material fact is present, and when the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56 (c).

The ADEA makes it unlawful for an employer to fail to hire a prospective employee due to his or her age.  29 U.S.C. § 623(a)(1).  In presenting a case based upon age discrimination, a plaintiff may either present direct evidence of the claimed discrimination or he may make out a case of discrimination under the burden-shifting analysis set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994).  In this case Schiltz attempted to prosecute his case with both direct and circumstantial evidence.

### A.  Direct Evidence

-6-

Schiltz points to two pieces of "direct" evidence which he claims illustrates BNR's discriminatory intent in not wanting to hire him for one of the eight jobs for which he made application:  Dagnon's letter to Schiltz dated September 16, 1991[5] and Andres' use of factors such as grade level and salary in making hiring decisions for filling open positions. While the Dagnon letter may be unartfully written, when considered in light of the clarification letter sent by Mr. Steven Klug, BNR's Manager of Human Resources Planning, we find no error with the district court's determination that this evidence was insufficient to constitute direct evidence of discriminatory intent on the part of BNR.

As to the factors used by Andres in making his hiring decisions, such as salary and grade level, the court finds that the Supreme Court's decision in Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993), is dispositive.  In Biggins, the Supreme Court stressed that the ADEA sought to prohibit discrimination based upon age due to the stereotype that older individuals were less productive or competent. Id. at 610.  The Court held that factors other than age, but which may be correlative with age, do not implicate the prohibited stereotype, and are thus not prohibited considerations.  Id. at 611.  See also Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 763 (8th Cir. 1995); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125-26 (7th Cir. 1994).  The factors used by Andres are correlative with age, but are not prohibited considerations.  We find no error in the district court's conclusion that Schiltz failed to establish discriminatory intent by direct evidence.

### B.  Circumstantial Evidence/Prima Facie Case

As to the issue of discrimination based upon circumstantial evidence, this court must employ the familiar burden-shifting

---

[5]See supra note 2.

analysis established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  We have held this burden-shifting analysis to be applicable in ADEA cases.  <u>Richmond v. Board of Regents of Univ. of Minn.</u>, 957 F.2d 595, 598 (8th Cir. 1992)(citations omitted).  However, in applying the <u>McDonnell Douglas</u> analysis, a court should vary the elements of the test in accordance with the facts of each individual case.  <u>Texas Dep't. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253-54 n.6 (1981).  Therefore, for Schiltz's failure to hire claim, he may establish a prima facie case of age discrimination by proving that (1) he belonged to the protected class; (2) he was qualified for the positions for which he applied; (3) he was not hired for the position applied for despite his being sufficiently qualified; and, (4) the employer finally filled the position with a person sufficiently younger to permit an inference of age discrimination.  <u>See</u> <u>Kralman v. Illinois Dep't of Veterans' Affiars</u>, 23 F.3d 150, 155 (7th Cir.), <u>cert. denied</u>, 513 U.S. 948 (1994).  If Schiltz makes a prima facie case, thus raising an inference of age discrimination, the burden of production then shifts to BNR to articulate a legitimate, nondiscriminatory reason for its decision not to hire him.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  If BNR meets that burden of production, then Schiltz must prove that BNR's reason is merely a pretext for discrimination.  <u>Id.</u> at 804.

## 1.  Six Jobs Filled by "Sufficiently Younger" Persons

As to six of the jobs for which Schiltz applied, the district court concluded that Schiltz was unable to make out a prima facie case for these positions as the jobs were ultimately filled with individuals not "sufficiently younger" than Schiltz.  Relying on <u>Rinehart v. City of Independence, Mo.</u>, 35 F.3d 1263 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1822 (1995), the district court granted summary judgment for BNR regarding these positions.

As it did before the district court, BNR contends Schiltz fails to meet the fourth element of the prima facie case as the positions for which Schiltz applied were ultimately filled with individuals less than five years younger than he.[6] Schiltz argues the district court must be reversed in light of the recent Supreme Court case of O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307 (1996), which he maintains overturns the Rinehart decision. We cannot agree with Schiltz that the O'Connor decision demands the reversal of the district court on this point.

In the O'Connor case, plaintiff brought suit alleging his discharge violated the ADEA. At the time of his discharge, plaintiff was 56 and his replacement was 40. The Fourth Circuit upheld the district court's grant of summary judgment and stated that plaintiff could only establish the fourth element of a prima facie case of age discrimination if plaintiff's replacement was someone outside the protected class. The Supreme Court reversed the Fourth Circuit holding that a prima facie case in the ADEA context is not made out simply because the ADEA plaintiff is or is not replaced by someone outside the protected class. Instead, the Court stated: "[T]he ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." Id. at 1310.

The district court essentially followed the reasoning in O'Connor in granting summary judgment for BNR in this case. The district court did not rely on an arbitrary above 40/below 40 rule

---

[6]The positions Schiltz applied for were Manager-Accounting Services, Assistant Paymaster-Legal, Assistant Manager Administration, Manager-Tracing, Manager-Revenue Services, and Assistant Paymaster. These positions were respectively filled with individuals aged 43, 46, 51, 44, 48, and 47. At this same time, Schiltz was aged 48.

as had the Fourth Circuit in its decision. Instead, the district court determined that the individuals hired for the six positions at issue were not "sufficiently younger" than Schiltz for him to make out the fourth element of the prima facie case under the McDonnell Douglas analysis. We agree. We conclude that the facts surrounding Schiltz's claim for a new position do not raise an inference of discrimination. Two positions were filled by individuals older than or the same age as Schiltz. Four positions were filled with individuals younger than Schiltz. However, of these four positions, the largest age disparity between Schiltz and the individual hired for the job was five years. On these facts, the age disparities do not raise an inference of discrimination as the individuals hired for the position were not "substantially younger" than Schiltz. Id. We find that the district court properly analyzed Schiltz's age discrimination claim under the ADEA and granted summary judgment under the appropriate standard.

### 2. Two Other Jobs For Which Schiltz Was Not Hired

As to the two other positions for which Schiltz was not hired, one was never filled. Kralman 23 F.3d at 155. The other position was filled by a person twenty-six years younger than Schiltz, Mr. Todd Marolt ("Marolt"). However, Marolt possessed a college degree in business administration, an educational preference for the position.[7] Schiltz could not make out a prima facie case for a job that was never filled, and we find that BNR articulated a legitimate, non-discriminatory reason for hiring Marolt. Id.

### III. Breach of Contract Regarding Place of Union Seniority Rights

---

[7]The July 29, 1991, job posting for this particular position indicated the following education and/or experience was required: "College degree desirable; professional management courses and railroad accounting experience preferred; or a minimum of four years' railroad accounting experience, including supervisory experience." (Supplemental Appendix, p. 7.)

With regard to the summary judgment granted on Schiltz's claim of breach of contract surrounding the determination of the place of the vesting of his seniority rights, we again review the district court's grant of summary judgment de novo, applying the same standards as did the district court. Garner, 77 F.3d at 257. Summary judgment is only appropriate when the record is viewed in the light most favorable to the nonmoving party, when it reveals that no genuine issue of material fact is present, and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56 (c). We find no error in the district court's analysis.

Schiltz claim is governed by the Railroad Labor Act ("RLA"), 45 U.S.C. § 151 et seq. Disputes between railroads and their employees are classified as either major or minor disputes under the RLA. See Consolidated Rail Corp. v. Railway Labor Executives' Assoc., 491 U.S. 299 (1989)("Conrail"). Major disputes are defined as those disputes that create contractual rights between railroads and their employees; minor disputes involve the enforcement of those contractual rights. Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 723-24 (1945). A dispute is classified as "minor" if it "relates either to the meaning or proper application of a particular provision" in a CBA. Conrail, 491 U.S. at 303 (citation omitted). Moreover, minor disputes are subject to compulsory and binding arbitration before the NRAB Id. at 303-04.

BNR has the "relatively light burden" of establishing the exclusive arbitral jurisdiction of the NRAB under the RLA. Id. at 307. In fact, there is a presumption that disputes between railroads and their unionized employees are minor, and thus, arbitrable. If doubts arise as to the type of dispute at issue, a court should construe the dispute as minor. International Assoc. of Machinists & Aerospace Workers, Dist. Lodge No. 19 v. Soo Line R.R., 850 F.2d 368, 377 (8th Cir. 1988)(en banc)(citation omitted). The gravamen of Schiltz's argument revolves around the

interpretation of the contract language in the CBA known as the Orange Book and the place of the vesting of Schiltz's seniority rights. Article VIII, Section 4(c) of the Orange Book states: "When a Protected Employee transfers to another seniority district as a result of changes of operation or work transfer, his seniority shall be dovetailed into the roster to which transferred and his name shall be removed from the roster from which he transfers." Under the Orange Book, Schiltz argued his rights vested in the St. Paul district, while BNR argued his rights vested in the Northeastern district. If BNR's position regarding the interpretation of contract language is "arguably justified," then the dispute is deemed "minor," and it proceeds to arbitration. Conrail, 419 U.S. at 307. We find no error with the district court's conclusion that BNR's interpretation of the provisions at issue was "arguably justified," and thus, the dispute between BNR and Schiltz was minor and should have proceeded to arbitration before the NRAB as it did.

Turning now to the NRAB's arbitration award, this court's power of review is "'among the narrowest known to the law.'" See International Assoc. of Machinists and Aerospace Workers v. Northwest Airlines, 858 F.2d 427, 429 (8th Cir. 1988)(citations omitted). "Courts may set aside board orders on three grounds: (1) the board's failure to comply with the provisions of the Railway Labor Act; (2) failure of the order to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." Id. (citing 45 U.S.C. § 153, First (q)); Union Pacific R.R. v. Sheehan, 439 U.S. 89, 99 (1978)(per curium); Brotherhood of Ry., Airline and Steamship Clerks v. Kansas City Terminal Ry., 587 F.2d 903, 905-06 (8th Cir. 1978), cert. denied, 441 U.S. 907 (1979). However, Schiltz does not seek to overturn the NRAB's decision based upon one of these three grounds. Instead, he seeks reversal of the decision upon the ground of "public policy." See Union Pacific R.R. Co. v. United Trans. Union, 3 F.3d 255 (8th Cir. 1993), cert. denied, 510 U.S. 1072

(1994).  Under narrow circumstances, the public policy ground disallows the courts to lend their authority to a board decision which might harm the public.  Id. at 261-62 (concluding that a well-defined and dominant public policy against a railroad's employment of a person who used drugs or alcohol would be grounds for the overturning of an arbitration board's decision to reinstate such an individual).

Schiltz argues for a reversal of the NRAB decision on the basis of a "well-defined and dominant" public policy, that is the public policy of protection of workers.  Schiltz contends that the job security provisions of the Orange Book aided BNR in receiving the Interstate Commerce Commission's approval for its merger with other railroads back in 1967, and he further argues that to allow the NRAB's decision to stand would violate the general policy of protecting workers.  The court finds Schiltz's argument unpersuasive.  The court simply cannot find that the private benefit that would inure to Schiltz, that is, the placement into one seniority district as opposed to another, is the type of "well-defined and dominant" public policy which courts have had in mind in recognizing this exception.  Id. at 260-62.

**IV.  Age Discrimination Based Upon BNR's Refusal to Grant Seniority in the St. Paul District**

We again review the district court's grant of summary judgment on this claim de novo.  Garner, 77 F.3d at 257.  And, we again have only narrow powers to review the NRAB's decision.  Northwest Airlines, 858 F.2d at 429.

Schiltz argues that BNR violated the ADEA by refusing to allow him to exercise his seniority rights in the St. Paul seniority district.  He contends that he should be allowed to pursue his statutory cause of action under the ADEA outside any arbitration decision made by the NRAB.  However, the acceptance of this

argument would lead to the evisceration of the grievance and arbitration procedures provided by the RLA. This court realizes that the scope of RLA preemption has been narrowed by recent Supreme Court decision. <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246 (1994)(allowing an employee to assert a statutory right under Hawaii's Whistleblower Act instead of resolving the dispute under the terms of the CBA because of the RLA's preemption). However, Schiltz's claim is distinguishable from that in <u>Hawaiian Airlines</u> as Schiltz's claim is inextricably intertwined with the language contained in the CBA. The issue of where Schiltz could assert his seniority rights had to be determined by the CBA's language. Claims arising out the interpretation of labor agreements should proceed to arbitration for resolution. See <u>Fry v. Airline Pilots Ass'n Inter.</u>, 88 F.3d 831, 835 (10th Cir. 1996).

## V. Breach of Duty of Fair Representation

As already noted, the court has very limited power of review over arbitration awards. <u>Northwest Airlines</u>, 858 F.2d at 429. To begin to make a claim for breach of duty of fair representation arising out of a union's handling of a grievance, a plaintiff must demonstrate both that the underlying grievance has merit and that the union failed to fairly represent him. <u>Hines v. Anchor Motor Freight, Inc.</u>, 424 U.S. 554 (1976). Here the NRAB found against Schiltz on the merits of his contract claim. Since Schiltz's underlying grievance regarding the interpretation of the CBA lacked merit, TCU's duty to represent Schiltz was never breached. See <u>DeCostello v. Teamsters</u>, 462 U.S. 151, 164-65 (1983).

## VI. Conclusion

We conclude that summary judgment was properly entered for BNR and TCU by the district court in this matter. Therefore, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT