# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1708

_____

Larry J. Evermann,

    Plaintiff - Appellant,

v.

BNSF Railway Company,

    Defendant - Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska.
\*
\*
\*

_____

Submitted: February 11, 2010
Filed: June 14, 2010

_____

Before LOKEN, Chief Judge,[*] GRUENDER and BENTON, Circuit Judge.

_____

LOKEN, Chief Judge.

Larry J. Evermann, a conductor for the BNSF Railway Company (BNSF) since 1976 and a member of the United Transportation Union (the Union), brought this action in state court seeking a declaratory judgment that § 25-1640 of the Nebraska Revised Statutes obligates BNSF to reimburse him for "productivity shares" lost because of his service on a federal grand jury. After BNSF removed the case to federal court, Evermann moved to remand, arguing lack of federal question

_____

[*] The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

jurisdiction over his state law claim. BNSF responded that the state law claim is completely preempted by the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (RLA). BNSF also moved to dismiss, arguing that the RLA requires compulsory, binding arbitration of this "minor dispute" over the proper application of a collective bargaining agreement (CBA). See Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1413-14 (8th Cir. 1997); 45 U.S.C. § 153 First (i). The district court[1] denied Evermann's motion to remand and granted BNSF's motion to dismiss. Evermann appeals. Reviewing these rulings *de novo*, we affirm. See Gore v. Trans World Airlines, 210 F.3d 944, 948 (8th Cir. 2000) (standard of review), cert. denied, 532 U.S. 921 (2001).

In December 1980, BNSF and the Union entered into a "Crew Consist Agreement," a CBA enabling BNSF, in exchange for various concessions, to operate specified categories of trains with a reduced crew of one conductor or foreman and one brakeman or yard helper. One concession, critical to this dispute, was set forth in Article 17 of the Agreement, which provided in relevant part:

> (a) For each yard tour of duty or road freight service trip that a crew is operated with one (1) conductor or foreman and one (1) brakeman or yard helper, [BNSF] will pay into the Employes' Productivity Funds the sum of $48.25. This payment will be made on a semi-monthly basis for the sole and exclusive benefit of the eligible protected . . . employes[2] represented by [the Union] and is to be considered as an account or trust of and for the protected employees as a sharing in productivity savings.

---

[1]The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska.

[2]Defined as all BNSF employees who rendered prior compensated service under CBAs between the parties and were employees on the effective date of the Agreement or were subsequently returned to service with seniority.

(b) Separate Employe Productivity Accounts shall be maintained for each particular road and yard seniority district unless otherwise agreed by [the Union and BNSF]. At the end of each year, each protected employe performing service in that particular seniority district will share in the division of the Employes' Productivity Fund, according to the number of yard tours of duty and/or road freight trips performed in that district during that calender year.

(j) The necessary arrangements for the establishment and administration of the Employes' Productivity Fund in compliance with ERISA [the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*] will be finalized within 120 days from the effective date of this Agreement.

Evermann began an eighteen-month term as a federal grand juror in May 2008, service that required him to miss three to five work days each month. The state law at issue, Neb. Rev. Stat. § 25-1640, provides that, "No employer shall subject an employee to discharge, loss of pay, loss of sick leave, loss of vacation time, or any other form of penalty on account of his or her absence from employment by reason of jury duty." BNSF alleges it has paid Evermann "the wages he would have earned had he worked on the dates he has been called for jury duty." However, BNSF denied Evermann's demand for Productivity Fund shares for missed trips, citing prior arbitration rulings that only employees who actually "perform" qualifying trips are eligible for productivity shares under the Crew Consist Agreement. Evermann argues that refusing to reimburse him for the value of lost Productivity Fund shares is a "loss of pay" or "other form of penalty" that violates § 25-1640.

The central issue on appeal is whether the RLA preempts this state law claim against Evermann's employer. The Supreme Court has addressed this broad preemption issue in a host of cases. On the one hand, the Court has been reluctant to preempt employment standards within the traditional police power of the States. On the other hand, the Court has not hesitated to invoke preemption when needed to effectuate the congressional purpose in enacting the RLA, "to promote stability in

-3-

labor-management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). The general principle that has emerged is rather easy to summarize but often difficult to apply -- if a state law claim "requires the interpretation of a collective-bargaining agreement," it is preempted. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988). However, the RLA "does not pre-empt causes of action to enforce rights that are independent of the CBA." Hawaiian Airlines, 512 U.S. at 256. "[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Id. at 261 n.8, quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).

The district court concluded that Evermann's claim under Neb. Rev. Stat. § 25-1640 is preempted because his "alleged entitlement to productivity shares arises solely from the terms of the collective bargaining agreement," and interpretation of the CBA would be "certainly necessary" to resolve the claim. We agree.

Productivity Fund shares are an employee benefit created by Article 17 of the Crew Consist Agreement. Under Article 17(a), BNSF does not pay this benefit directly to employees who work on trains with reduced crews. Rather, for each "yard tour of duty or road freight service trip" operated with a reduced crew, BNSF contributes $48.25 to Productivity Funds established and administered in compliance with ERISA. Under Article 17(b), at the end of each year, Evermann as a protected employee is entitled to share in the distribution of the Productivity Funds maintained for the district(s) in which he worked "according to the number of yard tours of duty and/or road freight trips [he] performed in that district."

Thus, the initial question raised by the claim Evermann has asserted is whether he "performed" road freight trips within the meaning of Article 17(b) on the days he was called for jury duty. The record does not reveal whether Evermann made such

a claim to the relevant Funds.[3]  If he did, and the claims were denied, without question that created a "minor  dispute" subject to mandatory arbitration under the RLA.[4]  See Bloemer v. Northwest Airlines, Inc., 401 F.3d 935, 938-39  (8th Cir. 2005) (claims under CBA-funded annuity contract subject to RLA arbitration); Jenisio v. Ozark Airlines, Inc. Ret. Plan, 187 F.3d 970, 973 (8th Cir. 1999) (RLA arbitration applies to ERISA pension plan dispute if carrier's plan is "maintained pursuant to a CBA"). This is not a "purely factual question" about the parties' conduct or the employer's motives that does not require interpretation of this CBA provision. Hawaiian Airlines, 512 U.S. at 262.  Rather, "[n]ot only the existence but also the scope of the entitlement depends on the collective bargaining agreement." Tice v. American Airlines, Inc., 288 F.3d 313, 315 (7th Cir. 2002); see Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 218 (1985) (claim of bad faith withholding of group disability benefits preempted).

No doubt hoping to avoid the reality that he is suing the wrong obligor, Evermann's complaint sought an order that BNSF "reimburse" him for "lost productivity fund shares."  But no right to reimbursement arises until a loss is incurred.  Here, no loss is incurred until the relevant Productivity Fund has refused Evermann's demand for an increased share based on jury service, and Evermann has exhausted his remedies under the Crew Consist Agreement through mandatory arbitration of this minor RLA dispute.  Moreover, BNSF's obligations to fund productivity shares under Article 17 are based upon the number of reduced-crew trains operated, not on the work "performed" by a particular protected employee.  Issues

---

[3]A Productivity Fund established and administered in compliance with ERISA "may sue or be sued . . . as an entity."  29 U.S.C. § 1132(d)(1).

[4]BNSF asserts that the Crew Consist Agreement only awards Productivity Fund shares to protected employees who actually made qualifying trips, not to employees who missed a qualifying trip due to a justifiable absence such as jury duty.  But that issue must be decided, not by BNSF or by this court, but by the fiduciaries who administer the relevant Productivity Fund, subject to mandatory RLA arbitration of any disputes growing out of the Fund's interpretation of Article 17(b).

such as whether BNSF made the required contributions for the periods in question and, if so, whether its obligation under the collectively bargained Crew Consist Agreement may be increased by reason of protected employee jury service clearly require interpretation of the Agreement in RLA-mandated arbitration.

Evermann seeks to enforce an independent *right* to payments under state law, namely, Neb. Rev. Stat. § 25-1640. But, as we have explained, the specific *claim* for reimbursement asserted in his complaint "depends on an interpretation of the CBA" and is therefore preempted. Hawaiian Airlines, 512 U.S. at 261. If Evermann did file a grievance under Article 17(b) of the Crew Consist Agreement and the issue was then submitted to mandatory arbitration under the RLA, it may be that the arbitrators' interpretation of the CBA would bring into focus an independent state law *claim* under § 25-1640 that would not be preempted because its "only source . . . is state law." Taggart v. Trans World Airlines, Inc., 40 F.3d 269, 274 (8th Cir. 1994); see Hawaiian Airlines, 512 U.S. at 258; Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 439 (8th Cir. 1998). In that case, if the new claim "depend[ed] for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement . . . federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." Lingle, 486 U.S. at 413 n.12. But lacking both complete preemption and an independent basis of federal jurisdiction, the parties would then resolve those questions of federal law in state court. Accordingly, the district court properly granted BNSF's motion to dismiss the present claim with prejudice.

The judgment of the district court is affirmed.

_____