# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 22-2376

———————————————

Nancy Avina

*Plaintiff - Appellant*

v.

Union Pacific Railroad Co.

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: January 12, 2023
Filed: July 3, 2023

——————————

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

——————————

STRAS, Circuit Judge.

After Nancy Avina twice lost out on a promotion, she sued Union Pacific for discrimination. The question is whether a dispute over the interpretation of a

collective-bargaining agreement required dismissal. The district court[1] concluded that the answer was yes, and we affirm.

## I.

Avina, a Hispanic woman in her forties, has worked in Union Pacific's Kansas City warehouse for over a decade. Like many of her co-workers, she is a member of a union that has a collective-bargaining agreement with the railroad. One provision lays out the application process for filling open positions. When a hiring manager posts an opening on a bulletin board, interested employees can submit an "application[], in duplicate," to the person listed.

Since the collective-bargaining agreement took effect in 2006, the process has changed. Union Pacific now uses an online tool called iTrakForce to collect applications. As one employee put it, iTrakForce is used "any time anyone puts a bid in for any type of job." Only the applicants who use it receive consideration.

When Avina decided to apply for a supervisor position, she faxed her resume rather than using iTrakForce. Unfortunately, her name never made it onto the official list of candidates, and someone else received the job. A year later, the same sequence of events unfolded, and once again, the position went to someone else.

According to Avina, Union Pacific's discriminatory hiring practices were to blame. She sued for age and race discrimination after learning that the applicants who received the positions were either younger, white, or both. *See* 29 U.S.C. § 623; 42 U.S.C. § 1981.

The application process itself soon became a focal point of the case. At trial, Avina's attorney specifically questioned Union Pacific employees about what the

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

collective-bargaining agreement requires of applicants. This line of questioning prompted Union Pacific to seek dismissal under the Railway Labor Act, *see* 45 U.S.C. § 151, *et seq.*, which requires disputes over the interpretation of a collective-bargaining agreement to go to arbitration. The district court granted the motion to dismiss.

## II.

We must decide whether, as Avina argues, the case belongs in federal court. Our review is de novo. *See Bloemer v. Nw. Airlines, Inc.*, 401 F.3d 935, 937 (8th Cir. 2005).

## A.

Employment-discrimination lawsuits regularly end up in federal court. *See* 28 U.S.C. § 1331. But not always. When a dispute over the meaning of a collective-bargaining agreement crops up in a case involving a railroad or an airline, federal courts cannot hear it. *See, e.g.*, *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 607–08 (8th Cir. 2004) (explaining that collective-bargaining disputes between airlines and their employees must go to mandatory arbitration). Here, the district court concluded that Avina had to litigate her claims before a special arbitral forum called the National Railroad Adjustment Board. *See* 45 U.S.C. § 153(i).

Labor disputes involving railroads fall into one of two categories. The first, "major disputes," involves "the formation of collective[-]bargaining agreements or efforts to secure them." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (brackets and citation omitted). They must be resolved through "a lengthy process of bargaining and mediation." *Sturge v. Nw. Airlines, Inc.*, 658 F.3d 832, 836 (8th Cir. 2011) (quoting *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 302 (1989)).

The other, "minor disputes," covers "controversies over the meaning of an existing collective[-]bargaining agreement in a particular fact situation." *Hawaiian Airlines*, 512 U.S. at 253 (citation omitted). The way to address those is different. The initial step is to use "the [railroad's] internal dispute-resolution processes." *Id.* (citation omitted). And then, if the dispute ends up in formal litigation, the Railway Labor Act strips federal courts of subject-matter jurisdiction and places it in the National Railroad Adjustment Board.[2] *See Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1070 (8th Cir. 2021); *see also Deneen v. Nw. Airlines, Inc.*, 132 F.3d 431, 439 (8th Cir. 1998).

Some railroad-employee disputes do not fit into either category. For those that involve "purely factual questions about an employee's . . . [or] employer's conduct and motives," the destination is the same as for any other employment-discrimination case: federal court. *Hawaiian Airlines*, 512 U.S. at 261 (quotation marks omitted); *see Sturge*, 658 F.3d at 836–37. But if there is any doubt about whether the dispute "require[s] . . . interpret[ing] any term of a collective-bargaining agreement," *Hawaiian Airlines*, 512 U.S. at 261 (citation omitted), dismissal is the only option, *see Sheet Metal Workers' Int'l Ass'n v. Burlington N. R.R. Co.*, 893 F.2d 199, 203 (8th Cir. 1990).

B.

We must now apply those general principles here. The parties agree that this case does not involve an attempt to "form[]" or "secure" a collective-bargaining agreement, so it does not fall into the major-dispute category. *Hawaiian Airlines*,

---

[2]At times, the district court mentioned "preemption." We clarify that "preemption is not the applicable doctrine" because "whether one federal law takes precedence over another does not implicate the Supremacy Clause." *Hastings v. Wilson*, 516 F.3d 1055, 1058 n.2 (8th Cir. 2008) (brackets and citation omitted). Even if the analysis looks similar, *see Sturge*, 658 F.3d at 836 n.4, the court "no doubt meant [to say] that the [Railway Labor Act] applied in this case and divested [it] of subject[-]matter jurisdiction," *Hastings*, 516 F.3d at 1058 n.2.

512 U.S. at 252 (citation omitted). All the focus is instead on whether the dispute is a minor one: in Railway Labor Act terms, does it "require[]" the interpretation of "some specific provision of the collective-bargaining agreement"? *Boldt v. N. States Power Co.*, 904 F.3d 586, 591 (8th Cir. 2018) (quotation marks omitted).[3] If so, Avina's case cannot remain in federal court.

1.

"The proper starting point" is "an examination of [her] . . . claim[s]." *Id.* at 590 (citation omitted). In the absence of direct evidence of discrimination, the three-step *McDonnell Douglas* framework applies. *See Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011) (applying it to a 29 U.S.C. § 623 claim); *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010) (same for a 42 U.S.C. § 1981 claim).

The steps by now are familiar. Avina must "first make out a prima[-]facie case of discrimination." *Boldt*, 904 F.3d at 591 (citation omitted). If she can, then Union Pacific must produce admissible evidence of a "legitimate, nondiscriminatory reason" for hiring someone else. *Gentry v. Georgia-Pacific Corp.*, 250 F.3d 646, 650 (8th Cir. 2001) (citation omitted). And finally, if the case gets to the third step, Avina must show that Union Pacific's reason was "just a pretext for discrimination." *Boldt*, 904 F.3d at 591 (quotation marks omitted).

All the action here is at the first step. In a failure-to-promote case like this one, Avina must establish that (1) she "was a member of a protected group; (2) she was qualified *and applied for* a promotion to a position for which the employer was seeking applicants; (3) she was not promoted; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Austin v. Minn. Mining and Mfg. Co.*, 193 F.3d 992, 995 (8th Cir. 1999) (emphasis added). The sticking point

---

[3]Although *Boldt* is a Labor Management Relations Act case, *see* 904 F.3d at 593, the analysis is "virtually identical" under the Railway Labor Act, *Hawaiian Airlines*, 512 U.S. at 260.

is whether she actually applied for either promotion: she says she did, but Union Pacific disagrees. To resolve the dispute, we need to know what it means to apply.

2.

The collective-bargaining agreement appears to provide an answer. A provision called Rule 11, entitled "Bulletining Positions," says that interested employees "must have their applications, in duplicate, on file in the office of the official whose name is signed to the bulletin, or in the office of the supervisor as may be specified on the bulletin, not later than noon of the tenth (10th) day from [the] date of [the] bulletin." Avina, for her part, faxed her resume within the deadline to the official listed in the bulletin. So, from her perspective, she followed Rule 11 to the letter.

Union Pacific has a different view. It claims that the use of iTrakForce is an "implied" term that arises from "established and recognized custom[s]," even if the collective-bargaining agreement makes no mention of it. *Bhd. Ry. Carmen v. Mo. Pac. R.R. Co.*, 944 F.2d 1422, 1429 (8th Cir. 1991) (citation omitted). After all, Union Pacific has a "past practice" of using it to fill open positions, *id.*, and the collective-bargaining agreement recognizes that the parties can "amend[]" the job-application process.

Here is the point. Whether Avina "applied for [either] promotion," *Austin*, 193 F.3d at 995, is "inextricably bound up" with the interpretation of Rule 11, *Johnson v. Humphreys*, 949 F.3d 413, 417 (8th Cir. 2020). Whether faxed resumes count as applications under the collective-bargaining agreement is something she will have to prove to establish her prima-facie case. Perhaps the best evidence of its importance was the prominent role it played at trial, especially in the questioning by Avina's attorney. In these circumstances, the issue is one for the National Railroad

Adjustment Board to decide.[4]  *See Richardson*, 2 F.4th at 1070; *see also Atchison, Topeka, and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563 (1987).

3.

Avina wants us to dig deeper.  In her view, whether Union Pacific amended the collective-bargaining agreement is itself a "purely factual" question that should go to a jury.  It can decide whether Union Pacific "*in fact* adopted such a process or whether it was a pretextual after-the-fact excuse" for discrimination.  At most, Rule 11 is a sideshow.

Once again, however, her attorney approached the issue differently.  He emphasized its importance during opening statements by discussing "the promotional process that [Union Pacific] is supposed to . . . carry out" in posting a position.  In fact, at one point, he even said that "the entirety of [Union Pacific's] interaction with a union employee [like Avina] is governed by th[e] [collective-bargaining agreement]."  Then, the specifics of Rule 11 repeatedly came up during questioning.

It is no wonder that the district court later noted that the trial was "*replete* with questioning, testimony, and evidence revealing the necessity of interpreting . . . the [collective-bargaining agreement]."  (Emphasis added).  In short, it became a "defining source" for her claims.  *Gore v. Trans World Airlines*, 210 F.3d 944, 950 (8th Cir. 2000) (giving weight to the fact that a party "indicated that [its] actions were required according to [its] interpretation of specific provisions in the collective[-]bargaining agreement").

---

[4]Having concluded that the district court lacked subject-matter jurisdiction, we cannot consider Union Pacific's argument that it was otherwise entitled to judgment as a matter of law.  *Cf. Steel Co. v. Citizens for a Better Env't*, 532 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

C.

Avina has one last-ditch argument: maybe she did not need to apply at all because Union Pacific was aware of her interest. One obvious problem with this argument, as we explain above, is that Avina's counsel argued the exact opposite to the jury.

But even beyond that problem, no one at Union Pacific ever "deterred" her from applying. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 368 (1977). The best she can do is point to a single statement from a supervisor who told her "not to even bother with applying because she had already made her selection." But this statement hardly qualifies as the kind of "gross and pervasive discrimination" that would excuse her alleged failure to apply in the customary way. *EEOC v. Audrain Health Care, Inc.*, 756 F.3d 1083, 1087 (8th Cir. 2014) (quoting *Teamsters*, 431 U.S. at 367–68) (rejecting the argument that a single statement by a hiring supervisor about preferring female nurses met this standard); *see Winbush v. State of Iowa By Glenwood State Hosp.*, 66 F.3d 1471, 1481 (8th Cir. 1995) (requiring futility).

\*     \*     \*

There is little doubt here: this case involves a "minor dispute" over the meaning of a collective-bargaining agreement. *Hawaiian Airlines*, 512 U.S. at 253. The trial itself made that much clear. If Avina wants to pursue this case further, she will have to do so elsewhere. *See Jenisio v. Ozark Airlines, Inc.*, 187 F.3d 970, 973 (8th Cir. 1999).

III.

We accordingly affirm the judgment of the district court.

_____