# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 23-3332/23-3483
_____

International Association of Sheet Metal, Air, Rail, and Transportation Workers,
Transportation Division

*Plaintiff - Appellee*

v.

The Kansas City Southern Railway Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri
_____

Submitted: September 26, 2024
Filed: January 14, 2025
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

This case arose after an arbitration board issued an award in favor of an employee in his dispute with Kansas City Southern Railway Company (KCSR). The employee's union — International Association of Sheet Metal, Air, Rail, and Transportation Workers, Transportation Division (SMART-TD) — sought to enforce the award in federal court. KCSR moved to dismiss, arguing the court

lacked subject matter jurisdiction because the arbitration board needed to clarify its award regarding back pay and vacation. The district court rejected KCSR's argument, determined the award was unambiguous, and enforced it under the terms suggested by SMART-TD. We reverse and remand for further proceedings.

## I. Background

In 2018, KCSR fired one of its conductors, Brandon Smith, after a disciplinary investigation. On Smith's behalf, SMART-TD challenged his discharge by progressing a grievance pursuant to the applicable collective-bargaining agreement (CBA) and the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188. In accordance with the RLA, the claim was submitted to arbitration before The First Division of the National Railroad Adjustment Board (Board). *See* 45 U.S.C. § 153 First (i). In 2022, the Board overturned Smith's discharge and explained its decision in Award No. 31034 (Award). The Award detailed the "Statement of Claim" by quoting SMART-TD's grievance:

> [T]hat Claimant be reinstated to service with seniority unimpaired and with pay for all time lost, including time spent at the investigation, without any deduction for outside earnings, if any, other than those received from the Carrier and with full benefits restored and reimbursement for any expenditures for health and welfare incurred, as well as any COBRA payments made by the Claimant, and with all notations removed from his personal record as a result of being dismissed from the service of [KCSR], effective November 2, 2018.

The Award then described the circumstances surrounding Smith's discharge and overturned his discipline. For the "Award" section, the decision simply stated, "Claim sustained."

After KCSR reinstated Smith, a disagreement arose about whether KCSR could offset Smith's back pay by any outside earnings Smith earned during his unemployment. SMART-TD then filed a petition to enforce the Award in federal court.

In January 2023, KCSR emailed the neutral arbitrator assigned to the original arbitration before the Board, seeking clarification of the Award on the issue of back pay. KCSR and SMART-TD exchanged emails with the neutral arbitrator about the issue. The neutral arbitrator explained SMART-TD "expressly stated it was seeking back pay without any deduction for outside earnings" and that he "fully sustained the claim." He stated it was not "permissible" to now change the Award.

In March 2023, while SMART-TD's petition was pending, KCSR asked for the Board to interpret the Award as it pertains to the back pay issue and whether Smith was entitled to paid vacation for 2023. To earn paid vacation, Rule 45(e) of the CBA required an employee to perform 140 days of compensated service in the preceding year unless certain exceptions applied. Smith did not work the requisite 140 days, and KCSR believed he was not entitled to paid vacation in 2023.

The day after KCSR's request to the Board for interpretation, KCSR filed a motion to dismiss for lack of subject matter jurisdiction in the district court, arguing the Award was incomplete and ambiguous. The district court denied KCSR's motion to dismiss. It ordered KCSR to provide Smith back pay with no deduction for outside earnings and all vacation benefits to which he was entitled. The district court also ordered KCSR to pay SMART-TD's attorney fees in accordance with 45 U.S.C. § 153 First (p). KCSR appealed.

While KCSR's appeals were pending, the Board issued an interpretation on the back pay issue. The Board characterized KCSR's request as whether the back pay awarded could be offset by Smith's interim earnings. It answered that question in the negative, sustaining the Award in full without any exceptions. The interpretation, however, did not mention the vacation issue. At oral argument before us, KCSR conceded that the Board's interpretation mooted the issue of back pay. KCSR asks us to reverse the district court's decision enforcing the Award and its decision awarding attorney fees to SMART-TD.

## II. Analysis

KCSR argues the district court erred by enforcing the Award because it lacked jurisdiction and was thus required to remand to the Board for interpretation of an ambiguity. We agree.

The RLA governs labor relations in the railway industry by establishing a mandatory arbitral mechanism for "the prompt and orderly settlement" of certain disputes between carriers and their employees. 45 U.S.C. § 151a; *see also Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1413–14 (8th Cir. 1997). Under the RLA, disputes "are classified as either major or minor." *Schiltz*, 115 F.3d at 1413. Major disputes involve "the formation of collective[-]bargaining agreements or efforts to secure them." *Avina v. Union Pac. R.R. Co.*, 72 F.4th 839, 842 (8th Cir. 2023) (alteration in original) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)), *cert. denied*, 144 S. Ct. 555 (2024). Minor disputes "relate[] either to the meaning or proper application of a particular provision" in a collective-bargaining agreement. *Schiltz*, 115 F.3d at 1413 (quoting *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 303 (1989)). The classification of a dispute "is important when establishing jurisdiction because minor disputes must be submitted to binding arbitration." *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 639 (8th Cir. 2001).

In determining whether a dispute falls within the exclusive arbitral jurisdiction of the RLA, we have explained that "it is not our function to interpret or construe the language of the collectively bargained-for agreements between the parties . . . ; rather, our function is to determine whether [the] case implicates a question of contract interpretation." *Sheet Metal Workers' Int'l Ass'n v. Burlington N. R.R. Co.*, 893 F.2d 199, 203 (8th Cir. 1990) (quoting *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 19 v. Soo Line R.R. Co.*, 850 F.2d 368, 376 (8th Cir. 1988)). In fact, "if there is any doubt about whether the dispute 'require[s] . . . interpret[ing] any term of a collective-bargaining agreement,' dismissal is the only option." *Avina*, 72 F.4th at 843 (alterations in original) (citation omitted) (quoting

*Hawaiian Airlines*, 512 U.S. at 261).  Furthermore, when federal courts are asked to set aside an RLA arbitration award, their power to review the award is "among the narrowest known to the law."  *Schiltz*, 115 F.3d at 1414 (quoting *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Nw. Airlines, Inc.*, 858 F.2d 427, 429 (8th Cir. 1988)).

Here, the parties followed a typical procedure for resolving the dispute over Smith's wrongful termination, eventually placing the dispute before the Board, which issued the Award.

RLA section 153 First (m) specifies that awards issued by the Board are "final and binding."  45 U.S.C. § 153 First (m).  Nonetheless, "[i]n case a dispute arises involving an interpretation of the award, the [Board] upon request of either party shall interpret the award in the light of the dispute."  *Id.*  Section 153 First (o) states that "[i]n case of an award by" the Board, it "shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named."  *Id.* § 153 First (o).  The RLA also permits parties to file a petition in federal court "[i]f a carrier does not comply with an order of [the Board] within the time limit in such order . . . ."  *Id.* § 153 First (p).

Keeping in mind the RLA strips federal courts of subject matter jurisdiction to interpret a collective-bargaining agreement, *see Avina*, 72 F.4th at 843, our limited jurisdiction similarly applies to the district court's role in enforcing RLA awards: "the judicial duty to enforce an arbitration award . . . is neither a duty nor a license to interpret it."  *Bhd. Ry. Carmen Div., Transp. Commc'ns Int'l Union, AFL-CIO v. Atchison, Topeka & Santa Fe Ry. Co.*, 956 F.2d 156, 160 (7th Cir. 1992).  When enforcing an award, the district court may not "implicitly interpret[]" a collective-bargaining agreement.  *Id.*  Instead, a district court should remand to the original arbitration panel "[i]f an arbitration award is too ambiguous to be enforced, as 'when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation.'"  *Bhd. of Locomotive Eng'rs &*

*Trainmen v. Union Pac. R.R. Co.*, 500 F.3d 591, 592 (7th Cir. 2007) (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000)). SMART-TD recognizes this rule, acknowledging in its brief that "an arbitration award may be ambiguous such that it is susceptible to more than one interpretation. The RLA addresses this issue, allowing either party to request an interpretation of an ambiguous award." Balancing the tension of the district court's power to enforce RLA awards and the Board's power to interpret those awards, federal courts should generally remand an ambiguous award for clarification — a principle we have acknowledged in other arbitration contexts. *See J.B. Hunt Transp., Inc. v. BNSF Ry. Co.*, 9 F.4th 663, 670 (8th Cir. 2021) ("Generally, '[a]n ambiguous award should be remanded to the arbitrators.'" (alteration in original) (quoting *Domino Grp., Inc. v. Charlie Parker Mem'l Found.*, 985 F.2d 417, 420 (8th Cir. 1993))); *Harvill v. Roadway Express, Inc.*, 640 F.2d 167, 170 (8th Cir. 1981) ("Ordinarily a suit to enforce an unclear award should be remanded to the grievance tribunal for clarification.").

We now turn to the parties' dispute over the Award's interpretation and the impact on the district court's jurisdiction to enforce the Award. We review de novo the district court's interpretation of an arbitration award, *J.B. Hunt*, 9 F.4th at 670, and the issue of subject matter jurisdiction, *Avina*, 72 F.4th at 842. When the district court's jurisdictional decision "is based on the complaint alone, or on the complaint supplemented by undisputed facts evidenced in the record," our "review is limited to determining whether the district court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) (quoting *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990)). "If the district court resolves disputed factual issues, its findings are reviewed for clear error." *Id.*

We begin with the issue of Smith's paid vacation benefits. KCSR asserts the parties did not discuss the impact of reinstatement on vacation benefits during arbitration, and the parties have not cited evidence showing otherwise. Consequently, the Award did not mention the issue. The closest the Board came

was to sustain SMART-TD's claim, which requested KCSR reinstate Smith "with full benefits restored." Further, unlike the issue of back pay, the Board has not since interpreted the Award's impact on Smith's right to paid vacation for 2023.

KCSR argues the Award required restoration of Smith's benefits as provided by the CBA. Rule 45(e) of the CBA requires employees to have worked 140 days in the preceding year to earn paid vacation for the current year unless an exception applies. KCSR interprets the provision as applying to wrongfully terminated employees upon their reinstatement. The district court noted KCSR's interpretation was consistent with KCSR's past practice when reinstating terminated employees represented by SMART-TD, a practice to which SMART-TD did not object. Nonetheless, the district court determined "[t]he claim sought restoration of full benefits, and vacation time is necessarily included in any fair understanding of benefits." We conclude the district court erred by going outside its jurisdiction to interpret a term of the CBA when it enforced the Award.

The district court may be correct that "benefits" includes vacation. Yet it is not so clear that restored "benefits" includes paid vacation when the employee did not meet an explicit condition for earning vacation outlined in the CBA. Smith was capable of specifically identifying the relief he sought. His claim requested reinstatement with "seniority unimpaired," "pay for all time lost, including time spent at the investigation," "reimbursement for any expenditures for health and welfare incurred," "COBRA payments made," and "all notations removed from his personal record as a result of" his dismissal. Although Smith's claim detailed several specific requests in the event his claim was sustained, it never mentioned paid vacation. The mere fact that Smith also requested "full benefits restored" does not necessarily mean the Board intended to automatically award him paid vacation after he was reinstated in light of the requirements of Rule 45(e) of the CBA. The ambiguity is amplified by the fact the issue was never brought before the Board, and SMART-TD's position conflicts with the parties' past practice. We therefore conclude the Award is ambiguous because each party offers a reasonable

interpretation of the Award. *See Bhd. of Locomotive Eng'rs & Trainmen*, 500 F.3d at 592.

Although SMART-TD claims KCSR waived the vacation issue by not raising it to the Board, the record does not show that the parties knew there was a dispute at that time. In fact, as the district court noted, withholding paid vacation was "consistent with [KCSR]'s past practice when reinstating terminated . . . employees," which in the past had "occurred without objection from SMART[-TD]." We also note that KCSR complied with the Award to the extent the parties did not challenge its interpretation, and our review of the record before us does not give us reason to suspect KCSR manufactured the ambiguity it raised. *See Bhd. of Locomotive Eng'rs & Trainmen*, 500 F.3d at 593 (explaining trivial ambiguities in awards that are manufactured by a party are not a ground to refuse to enforce an award).

Ultimately, resolving the ambiguity of the Award requires interpreting a particular provision of the CBA addressing the subject of paid vacation. As a result, the court lacks jurisdiction to interpret the CBA because the controversy arises in the context of the RLA. *See Avina*, 72 F.4th at 842 ("When a dispute over the meaning of a collective-bargaining agreement crops up in a case involving a railroad . . . , federal courts cannot hear it."). Accordingly, the district court erred by failing to remand to the Board for interpretation of the Award. *See United Transp. Union v. S. Pac. Transp. Co.*, 529 F.2d 691, 693 (5th Cir. 1976) (holding if "the award is too indefinite to be enforced, and cannot be made definite by considering nonspecialized extrinsic evidence, then the court should remand to the board for clarification of the award"). Although the parties also originally disputed the interpretation of the Award over Smith's entitlement to back pay without deductions based on interim earnings, the parties have received the Board's interpretation on that question, which moots that specific issue.

That leaves the issue of attorney fees, which the district court awarded to SMART-TD because it prevailed in its effort to enforce the Award. *See* 45 U.S.C.

§ 153 First (p) ("If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit.").  Because the district court erred in enforcing the ambiguous Award without the Board's interpretation, we vacate the award of attorney fees.[1]

### III.  Conclusion

For the foregoing reasons, we reverse and vacate the judgments of the district court and remand for further proceedings consistent with this opinion.

_____

---

[1]In light of this opinion, the district court may reconsider on remand whether SMART-TD is entitled to any attorney fees and, if so, in what amount.