# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1583

_____

| | | |
|---|---|---|
| Michael W. Kobus, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| The College of St. Scholastica, Inc., | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: February 10, 2010
Filed: June 21, 2010

_____

Before LOKEN, Chief Judge,* GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Michael Kobus sued his former employer, the College of St. Scholastica (the College), alleging that his forced resignation interfered with or denied his rights under the Family Medical Leave Act (FMLA) in violation of 29 U.S.C. § 2615(a)(1), and discriminated against him on account of disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112(a) and (b)(5)(A), and the Minnesota

_____

*The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

Human Rights Act (MHRA), Minn. Stat. § 363A.08. The district court[1] granted the College summary judgment, dismissing these claims. Kobus appeals. Reviewing the grant of summary judgment *de novo*, we affirm. See Scobey v. Nucor Steel-Arkansas, 580 F.3d 781, 785 (8th Cir. 2009) (standard of review).

## I. Background

Kobus worked as a painter from August 1997 to January 2007, supervised by Tim Orlowski, the College's maintenance manager. In mid-2005, due to a series of personal and family misfortunes, Kobus was diagnosed with depression and prescribed the antidepressant Paxil. Kobus told Orlowski he was suffering from stress and anxiety but did not disclose the depression diagnosis or that he was taking Paxil. In a November 2006 meeting, Kobus told Orlowski that he may need time off from work to deal with his stress and anxiety because, he testified, everything "was piling up, and I was asking him about different leaves." Once again, Kobus did not mention depression or his antidepressant medication. After the meeting, Orlowski put the College's form entitled, "Request for Family Medical Leave," in Kobus's mailbox and told him he could apply for FMLA leave if he had a serious medical condition. Kobus put the form in his drawer without reading it. Kobus testified that he told Orlowski, "I didn't need any leave. Not just FMLA; any leave. I did not need a leave at that time" because "I thought I could handle it."

In late November 2006, Orlowski issued Kobus a written warning for excessive absenteeism. Kobus again was absent from January 15 to 18, 2007. Each day, he left a message informing Orlowski that he was experiencing headaches and neck pain. Kobus had no vacation or sick leave time available; his time card recorded that he was "out sick." On January 18, Kobus called Orlowski to ask for a "mental health leave"

---

[1]The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota.

because family problems were causing "these knots in my neck and the pains in my head." When asked at his deposition, "What did Tim say," Kobus testified:

> A:     He asked about the Family Medical Leave Act.
> Q:     Okay. He brought that up?
> A:     Yeah. "Are you going to do that?" And I says, "Well, I don't know. What's involved?" And he said something about a doctor, and I says, "I don't have a doctor. Do you have anything else?"
> Q:     Okay. And then what did Tim say?
> A:     He says, "I'll check and I'll get back to you later on."
> Q:     When Tim mentioned the Family and Medical Leave [Act], did he tell you you'd have to get a doctor to sign some piece of paper to apply for the leave?
> A:     That's what he said.
> Q:     Okay.
> A:     And that's when I asked, "Is there any" -- you know, "This might be some trouble. I don't have a doctor. Is there any other way I can go?"

After the phone conversation, Orlowski explained Kobus's request to the college's Associate Director of Human Resources. The two determined that a leave of absence would not be granted. The Associate Director asked Orlowski to verify that Kobus "was just asking for a leave of absence from the college without FMLA," and to ask "whether or not a physician could sign off or certify him to be on leave." Later that afternoon, Orlowski called Kobus. According to Kobus, Orlowski "told me he was working on a deal where I would get paid two weeks' severance pay, and I wouldn't have to work for it, and they would accept my resignation because there was nothing available for me."[2] Kobus submitted a letter of resignation the next day. He did not mention depression or his medication during either phone conversation with

---

[2]Orlowski testified: "I asked him . . . 'Mike, are you telling me that you just want a leave of absence from the college and you do not want to apply for Family Medical Leave Act?' And Mike told me he did not want to apply for FMLA." Kobus denies there was any discussion of FMLA in the second phone call. If material, this is a disputed issue of fact, so we credit Kobus's account of the conversation.

Orlowski, nor did he refer to this condition or FMLA leave during an exit interview with the Associate Director on January 19.

## II. The FMLA Claim

The FMLA provides that an eligible employee is entitled to twelve weeks of unpaid leave per year for reasons that include, "Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "[T]he employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir.), cert. denied, 528 U.S. 1050 (1999). The employee seeking FMLA leave must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b); see Woods v. DaimlerChrysler Corp., 409 F.3d 984, 992 (8th Cir. 2005) ("notice as soon as both possible and practical that a serious health condition caused his absence") (quotation omitted). Kobus claims he had a serious medical condition on January 18, 2007, and the College denied him this entitlement when it told him no leave was available.

Many cases have turned on whether the employer failed to perceive an FMLA duty based on general information the employee provided about his or her medical condition. See, e.g., Scobey, 580 F.3d at 786-87 and 791 (Bye, J., dissenting). But here, as the district court recognized, that is not the issue because supervisor Orlowski perceived a potential FMLA leave situation when Kobus asked about leaves in November 2006. Orlowski told Kobus he might be eligible for FMLA leave and provided the College's FMLA leave application form. Kobus expressly disclaimed needing FMLA leave, or any leave at all. He explained, "I thought I could handle it."

During the first January 18 phone call, Kobus told Orlowski that he needed a "mental health leave" to deal with head and neck pain caused by stress and anxiety.[3] Kobus admits that Orlowski then prudently asked whether Kobus was requesting FMLA leave. Kobus asked what was involved. Orlowski said, "you'd have to get a doctor to sign some piece of paper to apply for the leave." Kobus replied, "I don't have a doctor. Is there any other way I can go?" When Orlowski called back to advise that no other leave was available, Kobus submitted his resignation instead of an FMLA leave application. Viewing these facts in the light most favorable to Kobus, the district court concluded that he "failed to adequately state an intent to take FMLA leave." We agree. Like the employee in Sanders v. May Department Stores, 315 F.3d 940, 944 (8th Cir.), cert. denied, 539 U.S. 942 (2003), Kobus did not pursue FMLA leave and in fact expressly rejected it. When an employee is made aware of the procedures necessary to obtain FMLA leave and chooses not to seek FMLA protection, the employer does not violate the FMLA by terminating the employee for excessive absenteeism. Greenwell v. State Farm Mut. Auto. Ins. Co., 486 F.3d 840, 843 (5th Cir. 2007).

Conceding as he must that the College may require an employee applying for FMLA leave to submit a medical certification,[4] Kobus argues that the College interfered with his exercise of FMLA rights because its written leave policies failed to "clearly provide" that a medical certification "must" be submitted, as opposed to

---

[3]Like depression, "stress and anxiety" are conditions with many variations. Complaining of stress and anxiety is not enough to put an employer on notice of a serious health condition. See Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 473 (8th Cir. 2007), cert. denied, 128 S. Ct. 2965 (2008); 29 C.F.R. § 825.303(b).

[4]See 29 U.S.C. § 2613(a); Scobey, 580 F.3d at 786. If an employee "fails to provide the employer with a complete and sufficient certification . . . the employer may deny the taking of FMLA leave." 29 C.F.R. § 825.305(d). Indeed, if the employee never provides a certification, "the leave is not FMLA leave." 29 C.F.R. § 825.313(b).

"may be" required. Like the district court, we conclude that no reasonable jury could find that the College's FMLA documents were ambiguous in requiring a medical certification as part of an FMLA leave application. The "Request for Family Medical Leave" form that Orlowski provided Kobus in November 2006 directed the employee "to ensure this form is filled out completely," and instructed a physician to "Complete Parts 1, 2, and 4." It also required the employee to state, "I have read and understand the College's FMLA Leave policy as published in the Employee handbook." The handbook provided: "The family medical leave of absence must be requested in writing [and] must be accompanied by the Medical Certification form (Section IV)." These unequivocal directives were not countermanded by the fact that the handbook elsewhere used the statutory word "may," or that the College's FMLA poster stated that the College "may" require medical certification, the term used in the prototype poster promulgated by the Department of Labor. See 29 C.F.R. Pt. 825, App. C (2008).[5] Therefore, when Orlowski told Kobus during the first January 18 phone call that he must submit a medical certification, as Kobus admitted, this was sufficient oral notice of the requirement. See 29 C.F.R. §§ 825.301(b)(1)(ii), (c)(2)(ii) (2008).[6]

In addition, even if we agreed with Kobus that the College's FMLA documents ambiguously addressed this issue, a reasonable jury could not find that the ambiguity caused Kobus's alleged constructive discharge. After his first phone conversation with Orlowski on January 18, if Kobus believed that a medical certification was required, as he admitted, he should have obtained the certification and submitted a Request for FMLA Leave instead of resigning. On the other hand, if he was uncertain whether a certification was required, he should have submitted a Request for FMLA Leave without a certification, making his intent to apply clear, and waited for the College's response. For these reasons, the district court did not err in granting summary judgment dismissing Kobus's FMLA claim.

_____

[5]The regulations expressly provide that employers "may duplicate the text of the notice contained in Appendix C." 29 C.F.R. § 825.300(a)(4).

[6]The regulations have since been amended. See Scobey, 580 F.3d at 785 n.2.

### III.  The MHRA and ADA Claims

Kobus alleged that the College violated the ADA and the MHRA when it denied a leave of absence to reasonably accommodate his depression disability.  Apart from one difference not relevant here, "an MHRA claim proceeds the same way as does a claim under the ADA." Rask, 509 F.3d at 469.  To establish a claim of disability discrimination under the ADA, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. App. § 1630.9, at 381 (July 2008 ed.); Wallin v. Minn. Dep't of Corrections, 153 F.3d 681, 689 (8th Cir. 1998), cert. denied, 526 U.S. 1004 (1999); Miller v. Nat'l Cas. Co., 61 F.3d 627, 629-30 (8th Cir. 1995) (collecting cases).  We affirm the dismissal of these claims for the reasons stated by the district court:

> Here, where the record contains no specific evidence that Kobus's limitations were apparent at work; where he repeatedly declined to reveal his diagnosis to his employer; where he expressed doubt about his ability to confirm his diagnosis with a doctor; and where he failed to affirmatively indicate an interest in pursuing FMLA leave after that option was suggested by his employer -- even after it was apparent that his alternatives were limited -- the Court concludes that this threshold has not been met.

Kobus argues that Question 17, Answer A, in the Equal Employment Opportunity Commission's ADA Enforcement Guidance lists an employee's request for time off because he is "depressed and stressed" as "sufficient to put the employer on notice that the employee is requesting reasonable accommodation."[7]  None of our prior ADA notice cases cited the Enforcement Guidance as controlling. See Rask, 509 F.3d at 470-71; Wallin, 153 F.3d at 689; Miller, 61 F.3d at 629-30. Instead, those

---

[7]EEOC Notice No. 915.002, Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities (Mar. 25, 1997), available at http://www.ipacweb.org/files/eeoc-psych.pdf (last accessed June 14, 2010).

cases apply the requirement in the regulations that an employee "inform the employer that an accommodation is needed." 29 C.F.R. App. § 1630.9, at 381 (July 2008 ed.); Wallin, 153 F.3d at 689. Moreover, we agree with the district court that the last sentence in Example A applies in this case: "if the employee's need for accommodation is not obvious, the employer may ask for reasonable documentation concerning the employee's disability and functional limitations."

The judgment of the district court is affirmed.

_____