# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2231

_____

Wade Boldt

*Plaintiff - Appellant*

v.

Northern States Power Company, a Minnesota Corporation, doing business as
Xcel Energy

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 12, 2018
Filed: September 14, 2018

_____

Before WOLLMAN, ARNOLD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

The question in this case is whether the Labor Management Relations Act completely preempts a Minnesota Human Rights Act claim for disability discrimination brought by a former employee of a nuclear power plant. Because the employee's claim cannot be resolved without interpreting a collective-bargaining

agreement, we affirm the judgment of the district court,[1] which both denied remand of the case to state court and granted judgment on the pleadings to the employer.

## I.

One day when Wade Boldt arrived at work at the Prairie Island Nuclear Generating Plant, a facility owned and operated by Northern States Power Company ("NSP"), his supervisor told him that he smelled of alcohol and ordered him to take a breathalyzer test. Boldt passed the test, but NSP continued to harbor concerns about his fitness for duty and placed him on administrative leave. Over the next eight months, NSP required Boldt to undergo a battery of tests and treatments before clearing him for work.

Boldt belonged to a labor union, so a collective-bargaining agreement governed the terms and conditions of his employment. The agreement provided that "Employees must meet all security and drug screening requirements as set forth by the Company" and that "[t]he Employer and Employees shall abide by all Company safety regulations, policies, and plant-specific or site-specific work rules." According to NSP, its fitness-for-duty policy required it to place Boldt on administrative leave and to impose conditions upon his reinstatement.

Boldt insists that NSP's actions were discriminatory, and in addition to accepting a layoff from NSP, he filed a lawsuit in Minnesota state court alleging disability discrimination under the Minnesota Human Rights Act ("MHRA"). Boldt's theory was that NSP treated him more harshly than it otherwise might have because it regarded him as an alcoholic. NSP maintained that its actions were consistent with

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

the terms of the collective-bargaining agreement and the federal rules and regulations governing nuclear power plants.

NSP removed the case to federal district court. The court denied Boldt's motion to remand to state court, holding that the Labor Management Relations Act ("LMRA") and the Energy Reorganization Act establish federal jurisdiction by completely preempting Boldt's MHRA claim. The district court also granted judgment on the pleadings to NSP. Boldt appeals both decisions.

II.

The central issue on appeal is whether this case belongs in federal court. Boldt argues that federal jurisdiction is lacking because he filed a state-law claim against NSP and there is no diversity of citizenship. If he is right, we must vacate the judgment and direct the district court to remand the case to state court. 28 U.S.C. § 1447(c); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014).

A.

The existence of federal-question jurisdiction typically depends on application of the "well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of [a] plaintiff's properly pleaded complaint." *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017) (internal quotation marks and citation omitted). But the well-pleaded-complaint rule also has a corollary: the doctrine of complete preemption. Some federal statutes completely preempt—and thereby "wholly displace[]"—state-law claims, so that "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Complete preemption is "rare" and arises under only a limited number of

federal statutes, including section 301 of the LMRA. *Johnson v. MFA Petrol. Co.*, 701 F.3d 243, 248 (8th Cir. 2012).

Section 301 governs lawsuits to enforce collective-bargaining agreements. *See* 29 U.S.C. § 185. But not every case involving a collective-bargaining agreement triggers federal jurisdiction. The Supreme Court has made clear that the LMRA completely preempts only "claims founded directly on rights created by collective-bargaining agreements" and "claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). It is undisputed that Boldt's disability-discrimination claim is "founded" on a right created by state law, so the only way federal jurisdiction exists is if Boldt's claim is "substantially dependent on analysis" of the collective-bargaining agreement. If it is, then the case belongs in federal court. If not, the district court must remand the case to state court.

A substantially dependent claim under the LMRA is one that "require[s] the interpretation of some specific provision of" a collective-bargaining agreement, *Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998), including any documents incorporated by reference, *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 204, 214–21 (1985). So, for example, if an agreement incorporates an employee handbook or employee-benefit policy by reference, the need to interpret those other documents in adjudicating a claim can also give rise to complete preemption. *See id.* (involving a disability-insurance plan "incorporate[d] by reference" into a collective-bargaining agreement).

Even though our task is to identify whether federal jurisdiction exists, state law does not take a backseat in the analysis. "The proper starting point for determining whether interpretation of a [collective-bargaining agreement] is required . . . is an

examination of the [state-law] claim itself." *Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006).

Boldt's claim is straightforward, even if the way in which he is required to prove it is not. He alleges that NSP believed that he was an alcoholic, which led it to impose onerous conditions that eventually culminated in his constructive discharge from the Prairie Island plant. *See* Minn. Stat. § 363A.08, subdiv. 2 (prohibiting an employer from discriminating against an employee in the "conditions . . . of employment" because of disability); *id.* § 363A.03, subdiv. 12 (defining "disabled person" to include anyone who is "regarded as having" "a physical, sensory, or mental impairment which materially limits one or more major life activities"). In a disparate-treatment claim like this one, Boldt must prove that NSP acted with discriminatory intent—that is, that its actions were "actually motivated" by a protected trait. *See LaPoint v. Family Orthodontics, P.A.*, 892 N.W.2d 506, 513 (Minn. 2017) (quoting *Goins v. W. Grp.*, 635 N.W.2d 717, 722 (Minn. 2001)). Boldt acknowledges that there is no direct evidence of discriminatory intent, so he must prove his case circumstantially under the *McDonnell Douglas* burden-shifting framework. *See Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The familiar three-step *McDonnell Douglas* framework, applied across employment-discrimination law, requires an employee to "first make out a prima facie case of discrimination." *Hoover*, 632 N.W.2d at 542. To establish a prima facie case, Boldt will be required to show that he "(1) is a member of [a] protected class; (2) was qualified for the position from which [he] was discharged; and (3) was replaced by a non-member of the protected class." *Id.* (first alteration in original) (quoting *Feges v. Perkins Rests., Inc.*, 483 N.W.2d 701, 711 (Minn. 1992)). If Boldt can get past step one, then "in order to avoid summary judgment," NSP must "produce admissible evidence . . . that there was a legitimate, nondiscriminatory reason for the discharge."

-5-

*Id.* At the final step, assuming Boldt's disability-discrimination claim advances that far, Boldt will need to show that NSP's reasons for the discharge were just a "pretext for discrimination." *Id.*

B.

With these background principles in mind, our task is to determine whether, in evaluating Boldt's disability-discrimination claim, a court will be "require[d]" to interpret "some specific provision" of the collective-bargaining agreement. *Meyer*, 163 F.3d at 1051. The parties focus on section 5.9 of the agreement, which provides that "[t]he Employer and Employees shall abide by all Company safety regulations, policies, and plant-specific or site-specific work rules." According to NSP, this provision incorporates all of the policies it has implemented to comply with federal nuclear-safety regulations, including its fitness-for-duty rules, and expressly grants it the right to enforce those policies to ensure the safety of the Prairie Island plant and those working within it. 10 C.F.R. §§ 26.21, .23.

NSP's fitness-for-duty policy sets detailed expectations for employees. For example, the policy says that, "[a]t a minimum, workers SHALL abstain from consuming alcohol at least five hours preceding scheduled work" and that "workers SHALL ensure alcohol consumption prior to the 5-hour abstinence period does not adversely impact fitness for duty." The policy also prescribes what happens when a supervisor has reasonable suspicion that an employee is unfit for duty: the supervisor "may require a worker to submit to drug and/or alcohol testing." Then, if an independent professional determines that an employee is unfit for duty, the employee may be placed "on administrative leave" and may even be required to "undergo substance abuse treatment."

-6-

1.

To evaluate whether complete preemption exists, we start with whether the collective-bargaining agreement incorporates NSP's fitness-for-duty policy. *See Allis-Chalmers*, 471 U.S. at 204, 214–21. Section 5.9 requires NSP and its employees to "abide by *all* Company safety regulations [and] policies." (Emphasis added). When used as an adjective, as it is here, "all" means "each and every one of." *Webster's Third New International Dictionary* 54 (2002). Both NSP and its employees are therefore required to comply with "each and every one of" the company's safety regulations and policies.

The only way to determine whether the parties have complied with this requirement is to consult NSP's safety regulations and policies, including its fitness-for-duty policy, which does not appear in the collective-bargaining agreement itself. For this reason, section 5.9's broad language sufficiently incorporates NSP's fitness-for-duty policy. *See BP Amoco Corp. v. NLRB*, 217 F.3d 869, 873–74 (D.C. Cir. 2000) (holding that a statement in a collective-bargaining agreement that "Benefit plans for the Company . . . will continue in force during the life of this Agreement" was sufficient to incorporate the company's health-insurance plan by reference (alteration in original)); *see also Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009) ("Basic contract principles instruct that where a writing refers to another document, that other document . . . becomes constructively a part of the writing . . . . The incorporated matter is to be interpreted as part of the writing." (brackets, internal quotation marks, and citation omitted)).

2.

The other issue is whether adjudicating Boldt's MHRA claim would *require* the district court to interpret the collective-bargaining agreement, including NSP's fitness-for-duty policy. We conclude that it would.

To establish his prima facie case under the *McDonnell Douglas* framework, Boldt must prove that he was "qualified" to continue working at the Prairie Island plant. Boldt says he was, and NSP disagrees. To resolve the dispute, a court would need to determine whether he was fit for duty, a question that the fitness-for-duty policy addresses in detail.[2] *See Hoover*, 632 N.W.2d at 542.

The Third Circuit's decision in *McNelis v. Pennsylvania Power & Light Co.* is instructive. 867 F.3d 411 (3d Cir. 2017). In rejecting a claim brought by an employee who was suspected of using bath salts—a synthetic drug that affects the central nervous system—*McNelis* held that an employee deemed unfit for duty is also unqualified under the Americans with Disabilities Act. *Id.* at 414–15. The court reasoned that an unfit employee is unable to perform the "legally mandated requirement[s]" of the job. *Id.* at 415. Likewise, Boldt cannot establish that he was qualified to work at the Prairie Island plant without addressing whether he was fit for duty—an inquiry that depends on interpreting NSP's fitness-for-duty policy.

We reached a similar conclusion under the Railway Labor Act in *Gore v. Trans World Airlines*. 210 F.3d 944, 948–50 (8th Cir. 2000). *Gore* involved an airplane mechanic who, according to fellow employees, said that he would kill himself and other employees at the airport. *Id.* at 947. The airline stripped him of his identification badge and parking pass and suspended him pending a termination hearing. *Id.* The airline justified its actions by relying on its collective-bargaining agreement, which generally required it to protect the safety of its employees and to promptly handle complaints involving worker safety. *Id.* at 947–48.

---

[2]Because we conclude that the district court would need to interpret the fitness-for-duty policy to determine whether Boldt has established a prima facie case of discrimination, we need not address whether interpretation of the policy would also be necessary at steps two and three of the *McDonnell Douglas* framework or whether interpretation at those steps would trigger complete preemption. The outcome of this case would be the same regardless.

Despite the lack of specificity of those provisions, we held that the Railway Labor Act completely preempted the mechanic's state-law claims against the airline and its employees. *Id.* at 950–52. We reasoned that the plaintiff could not "establish liability on his tort claims without demonstrating that the defendants' actions were wrongful under a proper interpretation of the relevant rights and duties bargained for in the" collective-bargaining agreement, particularly because the defendants had indicated that their actions "were required according to their interpretation of specific provisions in the collective bargaining agreement." *Id.* at 950, 952. Notably, we made clear that the complete-preemption analysis is "virtually identical" under the Railway Labor Act and the LMRA. *Id.* at 949.

Other than involving another statute, this case is no different from *Gore*. Boldt cannot prevail on his disability-discrimination claim without proving that he was qualified to work "under a proper interpretation of the relevant rights and duties" incorporated into the collective-bargaining agreement. *Id.* at 952. And just as in *Gore*, NSP argues that the actions it took against Boldt, including placing conditions on his reinstatement, "were required according to" its interpretation of the collective-bargaining agreement and its fitness-for-duty policy. *Id.* at 950. Because Boldt's claim is "substantially dependent on analysis of [the] collective-bargaining agreement," we conclude that section 301 of the LMRA completely preempts his disability-discrimination claim.[3] *Caterpillar*, 482 U.S. at 394 (citation omitted).

### III.

Now that we have determined that the district court had jurisdiction, the merits are straightforward. Boldt cannot prove his claim without relying on the

---

[3]NSP also relies on the Energy Reorganization Act as a separate basis for removal. We need not address this issue in light of our conclusion that the LMRA completely preempts Boldt's MHRA claim.

collective-bargaining agreement and NSP's fitness-for-duty policy, so his claim "must either be treated as a § 301 claim or dismissed as pre-empted." *Allis-Chalmers*, 471 U.S. at 220 (citation omitted). Even if we treat his claim as one arising under section 301, however, Boldt did not sue within the six-month statute of limitations, nor does he dispute that any such claim would be untimely. *See Becker v. Int'l Bhd. of Teamsters Local 120*, 742 F.3d 330, 332–33 (8th Cir. 2014). The district court accordingly did not err in granting NSP's motion for judgment on the pleadings.

IV.

We affirm the judgment of the district court.

_____