# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2298

_____

Lakeitha Boston

*Plaintiff - Appellant*

v.

TrialCard, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 13, 2023
Filed: July 28, 2023

_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

LaKeitha Boston appeals from the district court's[1] adverse grant of summary judgment in favor of TrialCard, Inc. ("TrialCard") on employment claims she brought under Mo. Stat. § 213.055.1 ("MHRA"), 42 U.S.C. § 1981 ("§ 1981"), and the Family Medical Leave Act ("FMLA"). We affirm.

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

## I.    BACKGROUND

Boston is an African American woman who was employed as a Team Lead by TrialCard in its Kansas City facility.  TrialCard maintained an attendance policy that required employees to notify its Workforce Management department of any upcoming absences.  The policy provides, "[i]f you are absent for three (3) or more consecutive days without notifying [TrialCard], it is assumed that you have voluntarily abandoned your position with [TrialCard], and your employment will be terminated."

In late 2019, Boston developed mental health issues and failed to appear for work and was tardy or left early on multiple occasions without notifying Workforce Management.  On December 5, 2019, Boston's supervisor issued a written warning to Boston.  The supervisor and Boston reviewed the warning, and it was acknowledged by signing on December 11.  The warning specifically notified Boston that further attendance deficiencies could result in her termination.

In early December, a different TrialCard supervisor told TrialCard's primary human resources officer, Dena Waddell, that Boston "just wasn't quite herself" at work.  On or about December 10, 2019, Boston told Waddell that personal issues were affecting her job performance and Waddell provided Boston with information on TrialCard's Employee Assistance Program, short-term disability benefits, and FMLA policies.  The following week, Boston met with Brian Garner, a therapist, who diagnosed her with depression and anxiety.

In January 2020, TrialCard changed the way it managed short-term disability and FMLA claims, retaining Cigna to oversee and process the claims.  Under the new plan, Cigna made all decisions related to medical leave eligibility and TrialCard supervisors were not involved in the process.  On January 6, Waddell instructed Boston in an email to direct any FMLA requests to Cigna.  Boston thereafter submitted a claim for intermittent FMLA leave.  Cigna issued Boston an Acknowledgment of Request for Leave Eligibility Notice.  The Notice informed

Boston that she was "Eligible Pending Determination" for intermittent FMLA leave. The Notice directed Boston to send a certification form from her healthcare provider to confirm her eligibility and told her the form must be "returned to Cigna within15 calendar days of the date of this letter." Prior to learning that Cigna had been retained, Boston had provided Waddell a form signed by Garner recommending intermittent FMLA leave for Boston. On January 15, Waddell forwarded the form to Cigna and based on this form, Cigna approved intermittent FMLA leave for Boston between January 4 and March 27. Ashli Quinn, Boston's immediate supervisor during this time, received an email from Waddell informing her that Boston's FMLA leave request had been approved and directing Quinn that Boston was "expected to follow proper call out procedures when she is out for FMLA." Waddell sent the same information to Boston.

Boston began using her approved intermittent leave. When her depression and anxiety did not improve, she requested continuous FMLA leave and/or short-term disability leave for February 3 through February 17, 2020. Cigna issued another Acknowledgment of Request for Leave Eligibility Notice. Like the first Notice, it informed Boston that she was "Eligible Pending Determination" for continuous FMLA leave between February 3 and February 17, and that her short-term disability claim was also "Pending Determination." The Notice stated Boston was "required to keep Human Resources updated on [her] status."

On February 2, Boston left a message with Waddell informing her that she had requested continuous leave. Boston reported to work on February 3. Quinn told Boston that she should not be at work while her leave claim was pending, so Boston left. On February 6, Cigna denied Boston's short-term disability claim, but indicated Boston was eligible for continuous FMLA leave. As with her previous FMLA claim, the Notice instructed Boston to provide a certification form signed by her medical provider to Cigna within 15 calendar days.

Cigna attempted to obtain documentation of Boston's medical conditions directly from Garner, but Garner failed to respond. Cigna made a second unsuccessful attempt to get the records from Garner on February 12. Boston claims that on February 13 Garner inadvertently faxed her FMLA documentation to the wrong number.

When Boston's pending continuous leave expired on February 17, she failed to return to work on February 18 or 19. Quinn emailed Waddell on February 20 seeking an update on Boston's leave. Waddell specifically asked Quinn if she had communicated with Boston, as Waddell had expected Boston to return to work on February 18. Quinn responded: "No," even though she and Boston had been in regular contact by text on their personal cell phones throughout the time Boston's leave request was pending. Boston had assumed Quinn was forwarding updates about her situation to Human Resources, but Quinn believed the communications were personal.

Later in the day on February 20, Waddell met with Quinn. Quinn informed Waddell that Boston had texted her stating she planned to seek additional leave. Boston does not dispute that she did not communicate her intent to be absent to Waddell or anyone else in TrialCard's Human Resources Department or Workforce Management. With this information in hand, Waddell called Boston to inquire whether she intended to remain employed with TrialCard. Boston did not answer, so Waddell left a message indicating Boston needed to respond immediately about whether she wanted to keep her job. Boston never responded.

Five days later, Boston contacted Cigna for an update on her claim review status and was informed the claim was going to be denied because Cigna had not received any verifying medical information from Garner. Boston told Cigna she would have Garner send the certification. The next day, Cigna told Waddell that it had not received the required medical paperwork from Boston or Garner and that Boston's FMLA claim was denied. That same day, Quinn contacted Boston and asked whether she had heard from Cigna. Boston told Quinn that she was going to

-4-

see her doctor the next day on February 27 because Cigna told her it was still missing paperwork.

Cigna denied Boston's FMLA claim on February 26 due to Boston's failure to submit the required medical certification paperwork. No TrialCard employee was involved in this decision. Waddell communicated Cigna's determination to her supervisor, Aimee Wagner, who told Waddell to terminate Boston for violating the attendance policy. Waddell sent Boston a termination letter that day. There is no evidence that Quinn was involved in the decision to terminate Boston. When Boston was terminated, nine days had passed since the end of the period she requested for continuous FMLA leave. During that nine-day period, Boston never reported for work and never forwarded any medical certification information to Cigna.

On February 27, Boston met with Garner and told him that Cigna had not received the required documentation for her FMLA leave. Garner then faxed a completed medical certification form to Cigna, which appeared to have been signed on February 11. When Boston called Waddell on February 28 to inquire about her status, Waddell explained that Boston's employment had been terminated for repeatedly failing to appear for work without notice. Boston unsuccessfully sought a reconsideration of the termination decision from TrialCard.

Boston sued TrialCard, claiming that she was terminated based on her race, disability, and sex, in violation of the MHRA and § 1981, and that TrialCard interfered with her FMLA claim and discriminated against her for exercising her FMLA rights. Boston appeals the adverse grant of summary judgment as to four of her five claims.

## II. DISCUSSION

We review a grant of summary judgment applying a *de novo* standard, taking the record in a light most favorable to and drawing all reasonable inferences in favor of the nonmoving party. Richardson v. Omaha Sch. Dist., 957 F.3d 869, 876 (8th

Cir. 2020). We will affirm when the movant shows that there is no genuine dispute of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### A. MHRA and § 1981 Claims

Boston alleges TrialCard discriminated against her based on her disability, race, and sex in violation of the MHRA and § 1981. Boston asserts that she has both direct and indirect evidence of discrimination.

As direct evidence, Boston points to the time when she told Quinn that her healthcare provider had recommended more time off and Quinn said she was glad because she thought two weeks would not be enough. When asked during her deposition about her opinion on whether Boston "deserved to be fired," Quinn testified that while it was not her decision, Boston's failure to report to work was grounds for termination. According to Boston, this is direct evidence that she was terminated for discriminatory reasons. While we are not convinced by Boston's characterization of Quinn's statements as evidence of discriminatory animus, Quinn's motivations are irrelevant because she had no role in the decision to terminate Boston. See Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993) (explaining that statements by non-decisionmakers do not support an inference of discrimination).

Since Boston has no direct evidence of discrimination, we analyze her claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Mo. Rev. Stat. § 213.101(3). See Bell v. Baptist Health, 60 F.4th 1198, 1203 (8th Cir. 2023). To establish a prima facie case of discrimination, Boston must show (1) she belongs to a protected class; (2) she was qualified to retain the job; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. Id. Like the district court, we find it unnecessary to decide whether Boston has established a prima facie case of

discrimination because TrialCard presented a legitimate, non-discriminatory, non-pretextual reason for Boston's termination.

TrialCard asserted it terminated Boston for multiple violations of the attendance policy. Boston was absent for nine days after her requested FMLA leave expired and Boston failed to notify Workforce Management as required by TrialCard's attendance policy. We have recognized that "violations of company policy are legitimate, nondiscriminatory reasons for termination." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 995 (8th Cir. 2011). While Boston maintains that she did not violate the attendance policy because she informed Quinn of her absences, it is plain from TrialCard's attendance policy that employees are required to report their absences to Workforce Management, and it necessarily follows that reports to Quinn did not comply with the policy. Boston's next argument that noncompliance should be excused because Quinn was TrialCard's agent and "Quinn messed up" by failing to notify Workforce Management suffers from two flaws, each of them fatal to her claim. First, this argument was not raised below, and we do not consider arguments raised for the first time on appeal. Richardson v. Sugg, 448 F.3d 1046, 1059 (8th Cir. 2006). Second, Boston provided no legal authority, nor have we found any, that stands for the proposition that an employee can satisfy an employer's attendance policy by reporting absences to any agent or employee of the company in the face of a policy that specifically requires a report to a designated employee or group of employees.

To satisfy her burden of showing a genuine issue for trial on whether TrialCard's actions were based on an intent to discriminate rather than on a good-faith belief that Boston committed misconduct justifying termination, see id., Boston asserts the attendance policy was enforced differently against disabled or African American employees. In support of this assertion, Boston submitted declarations of three African American TrialCard contractors who alleged they witnessed TrialCard treating white employees better than African American employees. Because there is nothing in the record establishing the white employees were similarly situated to

Boston, the declarations are insufficient to meet the rigorous requirement that the comparators be similarly situated in all relevant respects. See Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012) ("[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.").

Boston's "me too" evidence is likewise insufficient to establish TrialCard's proffered reason for her termination was pretextual. This Court has noted that "me too" evidence of other discrimination victims can be relevant because "an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination." Dindinger v. Allsteel, Inc., 853 F.3d 414, 424 (8th Cir. 2017). Boston's "me too" evidence, however, is insufficient because she has not shown that these individuals received the same discipline under the same circumstances from the same person. See Denn v. CSL Plasma, Inc., 816 F.3d 1027, 1035 (8th Cir. 2016). Boston's "me too" evidence fails to raise a genuine issue of material fact.

### B. FMLA Claim

The FMLA entitles employees to take twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements. See 29 U.S.C. § 2612(a)(1). There are three types of claims arising under the FMLA: (1) where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act (an entitlement or interference claim); (2) where an employee opposes any practice made unlawful under the FMLA and the employer retaliates against the employee (a retaliation claim); and (3) where an employer takes adverse action against an employee because the employee exercises rights to which she is entitled under the FMLA (a discrimination claim). See Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005-06 (8th Cir. 2012) (citations and quotations omitted). Boston raised both entitlement and discrimination claims.

To establish an entitlement claim, Boston must show she was eligible for FMLA leave, TrialCard was on notice of her need for FMLA leave, and TrialCard denied her benefits to which she was entitled under the FMLA. See Hasenwinkel v. Mosaic, 809 F.3d 427, 432 (8th Cir. 2015). After Boston submitted a claim for continuous FMLA leave, Cigna informed Boston that she was required to keep Human Resources updated on her status and that Cigna could require her to provide sufficient medical documentation. Cigna requested medical documentation, giving Boston 15 days to provide the appropriate documentation and informing her the failure to provide the requested information could result in the denial of her claim. While Boston asserts Garner faxed to Cigna a Behavioral Health Questionnaire that he appears to have signed on February 11, she acknowledges the fax was sent to the wrong recipient.

After repeated reminders to Boston and her healthcare provider that the required documentation had not been submitted, Cigna denied the claim. We have previously held that if an employee fails to provide a required medical certification, FMLA leave may appropriately be denied, and the employee does not have a viable entitlement claim. Kobus v. Coll. of St. Scholastica, Inc., 608 F.3d 1034, 1037-38 n. 4 (8th Cir. 2010) (affirming that employer may lawfully deny leave based on employee's failure to return certification). The undisputed evidence in this record is that Cigna did not have possession of the required medical certification within the required time. Boston's claim that Garner faxed the paperwork to the wrong recipient does not create a genuine dispute of material fact as to whether TrialCard wrongfully denied her FMLA benefits. Rather the undisputed facts show that Waddell and Wagner, the decision-makers, made the decision to terminate Boston only after it was established that Boston's claim had been denied and Boston had more than three unexcused absences in violation of TrialCard policy.

As to Boston's discrimination claim, she must establish that: (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) a causal connection existed between the protected activity and the adverse action. Pulczinski, 691 F.3d at 1007. To demonstrate a causal connection, Boston must

show the exercise of FMLA rights "played a part" in the adverse action. See id. Generally, more than mere temporal proximity between protected activity and adverse action is required. Sisk v. Picture People, Inc., 669 F.3d 896, 900 (8th Cir. 2012).

Boston contends that Quinn's testimony that she believed Boston should be fired is sufficient evidence of FMLA discrimination. The problem with this contention is there is no evidence Quinn played any role in TrialCard's decision to terminate Boston. Boston also claims the record shows she did not violate the attendance policy because she kept in contact with Quinn about her status. But even when viewing the evidence in a light most favorable to Boston, there remains sufficient evidence that she violated the attendance policy when she failed to notify Workforce Management, which was a legitimate, nondiscriminatory reason for her termination. Further, rather than hindering her FMLA leave, TrialCard and Cigna facilitated Boston's FMLA request. Waddell provided her with information and reached out to Cigna to correct an error it had made in initially denying Boston's request. Cigna repeatedly reached out to Boston and Garner about obtaining medical certification. Because Boston failed to present evidence to support her FMLA claim, the district court did not err in granting summary judgment in favor of TrialCard.

III.    CONCLUSION

For the foregoing reasons, we affirm the district court's decision.

_____