# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1859
_____

Brandon King

*Plaintiff - Appellant*

v.

United Parcel Service, Inc.; Shane Sipiorski; Lance King; Michael Trewet; Austin Courtney

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: April 16, 2025
Filed: September 25, 2025
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Brandon King ended up in federal court because he did not want to work on Saturdays. The district court[1] denied his motion to remand the case to state court

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

and granted judgment on the pleadings to his employer, United Parcel Service, Inc. We affirm both decisions.

## I.

Not all UPS drivers follow the same schedule. King believed that the company hired him to be a Monday-to-Friday driver but then pulled a bait-and-switch by having him drive on Tuesdays through Saturdays instead. Working on weekends had bothered him for a long time, which is why he repeatedly tried to get out of it. For a while, his strategy was to maximize his weekday hours to avoid weekend deliveries. Other times, he asked coworkers to trade shifts or split routes. Some Saturdays he just called in sick. In short, he went to great lengths to avoid them.

Eventually, UPS lost patience. It disciplined him in various ways, from writing him up to having a supervisor ride along on deliveries. The company even fired him more than once, only for the union to get his job back.

King accuses UPS of race and age discrimination, the creation of a hostile work environment, and retaliation. For support, he alleges that UPS lets younger, white employees avoid Saturday shifts and does not discipline them as harshly for similar misconduct. He filed the suit in state court under the Iowa Civil Rights Act. *See* Iowa Code §§ 216.6(1)(a), 11(2).

Federal court was the next stop, however, after UPS removed it. As relevant here, its theory was that the Labor Management Relations Act (LMRA) completely preempted King's state claims. In its view, deciding them would require an interpretation of the company's collective-bargaining agreement, which necessarily raised a federal question and wholly displaced his state claims, even though he had cut the references to it in his amended complaint. *See Boldt v. N. States Power Co.*, 904 F.3d 586, 589–90 (8th Cir. 2018). For that reason, the district court refused to remand the case to state court.

From there, the district court granted UPS's motion for judgment on the pleadings. Although federal law had displaced nearly all his state claims, King had repeatedly refused to allege an LMRA violation—the only claim that could work—in his complaint. For others, he had failed to state a claim. We review both the refusal to remand and the grant of judgment on the pleadings de novo. *See Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833, 836 (8th Cir. 2020) (explaining that whether a district court "correctly applied the [complete-preemption] doctrine presents an issue of law"); *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005) ("We review the district court's denial of a motion to remand and its dismissal of the complaint on grounds of preemption under a de novo standard." (citation omitted)).

## II.

"The central issue on appeal is whether this case belongs in federal court." *Boldt*, 904 F.3d at 589. King argues that federal jurisdiction is absent because he filed state claims against UPS and there is no diversity of citizenship. If he is right, we must vacate the judgment and direct the district court to remand the case to state court. *See* 28 U.S.C. § 1447(c); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014). Federal jurisdiction over at least one of his claims, however, would support supplemental jurisdiction over the others. *See* 28 U.S.C. § 1367(a).

## A.

Federal-question jurisdiction typically depends on application of the "'well-pleaded complaint rule,' which provides that [it] exists only when a federal question is presented on the face of [a] plaintiff's properly pleaded complaint." *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). One exception, however, is the doctrine of complete preemption. *See Boldt*, 904 F.3d at 590. Some federal statutes completely preempt—and thereby "wholly displace[]"—state claims, meaning that one "which comes within the scope of that cause of action, even if pleaded in terms of state law,

-3-

is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "Complete preemption is rare and arises under only a limited number of federal statutes . . . ." *Boldt*, 904 F.3d at 590 (citation omitted).

Section 301 of the LMRA, which governs lawsuits to enforce collective-bargaining agreements, is one of them. *See* 29 U.S.C. § 185; *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 248 (8th Cir. 2012). But only for "claims founded directly on rights created by collective-bargaining agreements" or "claims substantially dependent on analysis of" them. *Caterpillar*, 482 U.S. at 394 (citation omitted). It is undisputed that King's claims are "founded" on rights created by state law, not the collective-bargaining agreement, so the only way federal jurisdiction exists is if they are "substantially dependent on analysis of" it. *Id.* (citation omitted).

A substantially dependent claim under the LMRA is one that "require[s] the interpretation of some specific provision of" a collective-bargaining agreement. *Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998). Even though our task is to figure out whether federal jurisdiction exists, state law does not take a backseat. "The proper starting point for determining whether interpretation of a [collective-bargaining agreement] is required . . . is an examination of the [state-law] claim[s] [themselves]." *Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006).

### B.

King's first claim is straightforward, even if the way to prove it is not. He alleges race and age discrimination under the Iowa Civil Rights Act. *See* Iowa Code § 216.6(1)(a). To succeed, King had to establish that UPS acted with "discriminatory intent," meaning that race or age "actually played a role in [UPS's] decision[-]making process and had a determinative influence on the outcome." *Hedlund v. State*, 930 N.W.2d 707, 718–19 (Iowa 2019) (citation omitted). King offered no direct evidence of it, so the only other avenue was to prove his case circumstantially under the *McDonnell Douglas* burden-shifting framework. *See*

*Feeback v. Swift Pork Co.*, 988 N.W.2d 340, 347 (Iowa 2023); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The first step was to "ma[k]e out a prima[-]facie case" of discrimination. *Hedlund*, 930 N.W.2d at 720. To do so, King had to show that (1) he was a member "of a protected group"; (2) he was "qualified for [his] position[]"; and (3) "the circumstances of [the adverse employment action] raised an inference of discrimination." *Feeback*, 988 N.W.2d at 347; *see Banks v. Deere*, 829 F.3d 661, 665–66 & n.4 (8th Cir. 2016). If King had cleared that hurdle, the baton would have passed to UPS to "articulate some legitimate, nondiscriminatory reason for its" actions. *Feeback*, 988 N.W.2d at 347 (citation omitted). If it did, the burden would have shifted back to King "to demonstrate [that UPS's] proffered reason [was] pretextual or, while true, was not the only reason for [its actions] and that his [race or] age" also motivated them. *Id.* at 348.

The prima-facie case presented an insurmountable legal barrier for King. For the burden to shift to UPS, "the circumstances" surrounding the company's insistence that he work Saturdays had to "raise[] an inference of discrimination." *Id.* at 347. Key to that determination was whether the collective-bargaining agreement placed him in a category of employees who had to work weekends. If it did, UPS was just following its contractual obligations, not discriminating against him based on race or age. *Cf. Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014) (holding that an employer's actions under a stated policy do not give rise to an inference of discrimination). Allowing claims like this one to move forward would potentially subject employers to competing obligations under state and federal law. *See Anderson v. Ford Motor Co.*, 803 F.2d 953, 955 (8th Cir. 1986).

This case stands as an example. Article 22, Section 4(b) of the collective-bargaining agreement says that "full-time package car drivers" will be "protect[ed] . . . from being scheduled or forced to perform weekend delivery work." Other employees, called "22.4 combination drivers," work "five (5) consecutive day schedule[s] of Tuesday through Saturday or Wednesday through Sunday." If it turns

out that he falls in the latter category, then working Saturdays is part of the job, not something that arose out of race or age discrimination. Evaluating his discrimination claim, in other words, "substantially depend[s] on analysis of [the] collective-bargaining agreement." *Boldt*, 904 F.3d at 590 (quoting *Caterpillar*, 482 U.S. at 394).

The same goes for the discipline that King received for splitting routes, shirking his Saturday driving duties, and not following directions. King claims that UPS treated a white employee, who committed similar misconduct, more favorably. Without analyzing the collective-bargaining agreement, however, we cannot know whether the other driver was "similarly situated in *all* relevant respects," including whether he was a full-time package car driver or a 22.4 combination driver. *Grant v. City of Blytheville*, 841 F.3d 767, 774 (8th Cir. 2016) (emphasis added) (citation omitted). Nor can we know whether both were eligible for discipline under the collective-bargaining agreement's just-cause provision.[2] If the two were unalike in either way, then treating them differently would not "raise[] an inference of discrimination." *Feeback*, 988 N.W.2d at 347.

In short, King's race-and-age-discrimination claim is "substantially dependent on analysis of [the] collective-bargaining agreement." *Boldt*, 904 F.3d at 593 (alteration in original) (quoting *Caterpillar*, 482 U.S. at 394). Two consequences follow, one for jurisdiction and the other for the merits. First, "the case belongs in federal court." *Id.* at 590. Second, the claim "must either be treated as a § 301 claim or dismissed as pre-empted." *Id.* at 593 (quoting *Allis-Chalmers*

---

[2]It is true that "[i]n the typical case[,] a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). Here, however, there has been no discharge, and the just-cause provision is playing a different role: helping to decide whether King and the white employee he spotlights (and any others) were similarly situated. *See Grant*, 841 F.3d at 774; *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019) ("[T]he test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." (citation omitted)).

*Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). Given that King refused to litigate this case under section 301, he left only one choice: dismissal. *See id.*

## C.

King's hostile-work-environment claim has similar problems. He relies on the same acts that formed the basis for his discrimination claim, including the way the company and a supervisor treated his scheduling requests, to show the difficulties he faced. To prevail, he had to prove that "(1) he . . . belongs to a protected group; (2) he . . . was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment." *Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n*, 672 N.W.2d 733, 744 (Iowa 2003). Here, the fourth element is what triggered preemption.

The reason, yet again, is the collective-bargaining agreement, which discusses many of the "term[s], condition[s], or privilege[s]" of employment. *Id.* The right to discipline employees is a good example. It can affect the "term[s]" and "condition[s]" of employment. But the only way to figure out whether UPS "alter[ed]" any is by interpreting it, including its just-cause standard. *Id.* If he was a 22.4 combination driver, for instance, then disciplining him for shirking his weekend duties was not "abusive." *Id.* This claim, just like the previous one, depends on what the collective-bargaining agreement says, which makes it another casualty of complete preemption. *See Boldt*, 904 F.3d at 593.

## III.

Statutory retaliation is the only claim that escapes it. To adequately plead it, King needed to allege facts showing "(1) that he . . . engaged in [a] statutorily protected activit[y]; (2) an adverse employment action was taken against him . . . ; and (3) a causal connection exists between the two events." *Godfrey v. State*, 962 N.W.2d 84, 106–07 (Iowa 2021) (citation omitted). Although his filing with the

Iowa Civil Rights Commission qualified as a statutorily protected activity, *see* Iowa Code § 216.11(2), the complaint did not plausibly connect it to an adverse employment action, *see Godfrey*, 962 N.W.2d at 107.

The only real possibility was a written warning he received for taking an improper lunch break. A warning, however, is not an adverse employment action, at least in Iowa. *See Rheeder v. Gray*, 23 N.W.3d 1, 17 (Iowa 2025). And even if it was, it did not come until a month after UPS discovered the filing, with nothing connecting "the two events." *Godfrey*, 962 N.W.2d at 107 ("To establish a causal connection, the plaintiff must show the plaintiff's protected activity was a motivating factor in the employer's subsequent adverse employment action."); *see also Boston v. TrialCard, Inc.*, 75 F.4th 861, 869 (8th Cir. 2023) ("Generally, more than mere temporal proximity between protected activity and adverse action is required."). With no facts plausibly supporting two of the three elements of his statutory retaliation claim, it was doomed to fail.[3] *See Godfrey*, 962 N.W.2d at 106–08; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

IV.

One loose end remains. King believes the district court abused its discretion by dismissing the case rather than giving him another chance to amend his complaint. *See Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1367 (8th Cir. 2022). The general rule is that a district court can deny "leave to amend"

---

[3]King suggests that the grievances he filed were the *real* reason for UPS's retaliatory actions. The problem is that, upon amending his complaint, he dropped all references to them, presumably to avoid the possibility of preemption. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 246 (1959). We cannot now look to his old complaint to consider the grievances as support for his retaliation claim but then turn a blind eye when it comes to preemption. *See Hunter v. Page County*, 102 F.4th 853, 869 (8th Cir. 2024); *see also Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204–05 (7th Cir. 1998) ("A court cannot resuscitate . . . facts when assessing whether [an] amended complaint states a viable claim."). The choice he made allowed him to avoid one problem, only to create another.

when a plaintiff does "not submit a motion . . . [and does] not offer a proposed amended complaint." *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985); *see* N.D. & S.D. Iowa LR 15. King did neither, so the district court did not abuse its discretion in denying another amendment.

V.

We accordingly affirm the judgment of the district court.

_____